**FILED**

**2008 Dec 12 PM 06:36**

**CLERK U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**TOLEDO**

# EXHIBIT A

**FILED**

**2008 Dec 02 PM 04:35**

**CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO**

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL CAPITAL INVESTMENT SERVICES, INC. AND CONTINENTAL CAPITAL SECURITIES, INC.<br><br>Defendants. | ) | SIPA Liquidation<br>Adv. Pro. No. 03-3370<br><br>JUDGE MARY ANN WHIPPLE |
| In re:<br><br>CONTINENTAL CAPITAL INVESTMENT SERVICES, INC. AND CONTINENTAL CAPITAL SECURITIES, INC.<br><br>Debtors. | ) | |

**MOTION AND SUPPORTING MEMORANDUM FOR RULE 2004(a) EXAMINATION (DOCUMENT PRODUCTION)**

Thomas S. Zaremba, SIPA Trustee for Continental Capital Investment Services, Inc. and Continental Capital Securities, Inc. (Trustee), moves the Court, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, for entry of an Order authorizing the Trustee to serve Shumaker, Loop & Kendrick, LLP (SLK) with the subpoena attached hereto as Exhibit A (Second Rule 2004 Subpoena).

## MEMORANDUM IN SUPPORT OF MOTION

To expedite production of needed documents and to avoid being caught up in a "catch-22" between B.R. 2004 and the "relevancy" limitations of B.R. 7034, the Trustee is seeking production of SLK files using parallel discovery paths.

### I. The Scope of the Second Rule 2004 Subpoena

The Second Rule 2004 Subpoena which is the subject of this motion for leave, seeks two different categories of documents:

1. Documents that were:

   (i) initially requested in three (3) subpoenas issued to SLK under B.R. 2004 in June, August and September of 2006 (First 2006 Subpoenas) and again,

   (ii) on July 8, 2008 pursuant to B.R. 7034 (First 7034 Request) following this Court's June 27, 2008 order (Bankruptcy Order) regarding the Trustee's Motion to Compel (Motion to Compel)[1] – but

   (iii) have never been produced by SLK[2], and

2. Documents relating to Americus, Active Leisure and Interactive Video Education System (IVES) that were not requested in the First 2006 Subpoenas.

Documents relating to Americus, Active Leisure and IVES are the subject of a request for production served under B.R. 7034 on November 24, 2008, in the SLK Adversary (Second 7034

---

[1] This First 7034 Request was issued in Zaremba v. Shumaker etc., Adv. Pro. No. 06-03505 (SLK Adversary).

[2] The Second Rule 2004 Subpoena attached hereto as Exhibit A has three exhibits. All three of these exhibits were prepared by SLK. Exhibit 1 is a list of all SLK files related to Continental Capital Corporation (CCC). Exhibit 2 is a list of all SLK files related to Continental Capital Advisors, Inc. (CCA). Exhibit 3 is an index of all SLK files related to Continental Capital Merchant Bank (CCMB). SLK has produced some of its CCC files, but in response to the First 2004 Subpoena SLK produced only non-privileged documents of CCA and CCMB and has produced no additional documents in response to the First 7034 Request. All CCC files that SLK has agreed to, or has, produced to date are interlineated on Exhibit 1.

Request)[3]. On December 1, 2008, a subpoena identical in scope to the Second Rule 2004 Subpoena was served on SLK in Zaremba v. Pheasant, Adv. Pro. No. 05-03322 (Pheasant Subpoena).

**II. Alternative measures to obtain un-produced SLK files is warranted.**

SLK remains in possession of thousands of never before produced documents relating to this case. In that regard, SLK not only represented the Debtors, but it also represented many of the "private placement entities" that William C. Davis used as vehicles to steal millions of dollars from Debtors' customers and defraud many more through a massive Ponzi Scheme.

Four of the primary private placement entities that Davis used to steal customer funds were: 1- Continental Capital Corporation (CCC), 2- Continental Capital Merchant Bank (CCMB), 3- Continental Capital Advisors (CCA), and 4- a sometimes real, sometimes fictitious entity or group of entities all bearing some iteration of the name "Americus" or "Americus Communications" (collectively CCC, CCA, CCMB and Americus will be called the "Ponzi Companies"). SLK represented all four of the Ponzi Companies.

In the June 27, 2008, Bankruptcy Order regarding the Trustee's Motion To Compel, this Court held that three of the Ponzi Companies (CCC, CCA and CCMB) had all provided the Trustee with valid waivers of attorney client privilege. SLK has not appealed that aspect of the Bankruptcy Order and, therefore, SLK can no longer claim privilege as a basis for refusing to turn over its files relating to three of the Ponzi Companies.

The Bankruptcy Order also denied the Trustee's Motion to Compel, without prejudice, stating that the Trustee may seek the "subpoenaed documents through discovery in the adversary

---

[3] In footnote 4 to its recently filed Brief in its Appeal to the District Court, SLK refers to this Second 7034 request, describing it as "overbroad." Hence, the Trustee has reason to believe it unlikely that SLK will produce these documents without potentially protracted discovery proceedings.

proceeding [Adversary Proceeding No. 06-3505], subject to Rules 26 through 37. Likewise denial of the motion is also without prejudice to a subsequent motion or motions seeking authorization under Rule 2004 for investigatory activities appropriate in time and scope given the status of the SLK adversary proceeding." Bankruptcy Order, p. 9.

Accordingly, on July 8, 2008, the Trustee served SLK with the First 7034 Request which is identical in scope to the documents requested in the First 2006 Subpoenas. Although SLK produced some documents pursuant to this First 7034 Request, it objected to the production of many CCC documents and to the production of the previously withheld CCA and CCMB documents on the basis of "relevance" under B.R. 7026[4].

On November 4, 2008, counsel for the Trustee sent a letter to counsel for SLK identifying outstanding discovery issues, including the fact that SLK was withholding CCC, CCA and CCMB documents solely on "relevance" grounds. See, Exhibit B attached hereto. To date, SLK has not responded to this letter.

SLK's decision to withhold documents related to three (3) of the four (4) Ponzi Companies on the basis of "relevance" in response to the Trustee's request for their production under B.R. 7034, has necessitated the filing of this motion. If the Trustee's requests under B.R. 7034 are denied on the basis of "relevance," under the Bankruptcy Order, the Trustee would have recourse to seek them, for a second time, under Rule 2004. If the Trustee waits until the termination of potentially lengthy proceedings to determine whether they will be produced under B.R 7034, significant, potentially prejudicial, delay could well be experienced by the Trustee.

4 SLK has also produced a log of CCC documents withheld on the grounds of "work product" or a claimed "taxpayer" privilege. These withheld documents will be dealt with by motion in the SLK Adversary. Additionally, if the Trustee discovers that any documents are missing from those SLK has agreed to produce, that too will be dealt with in the SLK Adversary.

As this Court is aware, a number of deadlines are pending in several recovery actions initiated by the Trustee that may be affected by that delay.[5]

Especially since the attorney client privilege is no longer an impediment to the production of CCC, CCA or CCMB documents, by filing this motion now, the Trustee is asking this Court to consider whether the Trustee may require the production of documents relating to three of the Ponzi Companies, namely, CCC, CCA and CCMB, on any one of three parallel grounds, namely, 1- B.R. 7034 in the SLK Adversary; 2- B.R. 2004; or 3- pursuant to the Pheasant Subpoena.

The Trustee is, likewise, pursuing access to SLK's files regarding the fourth Ponzi Company, Americus, on the same three (3) parallel grounds. The vast majority of customer claims have been paid on the basis of money that was stolen using this sometimes real, sometimes wholly fictitious, entity. The Trustee has reason to believe that SLK, knowingly or unknowingly, assisted William Davis conceal thefts committed through Americus as late as 2002. Access to SLK's Americus files is, therefore, imperative.

As to IVES, numerous customer claims involving IVES were received and the Trustee has reason to believe that Merle Pheasant was actively involved in that company. The Trustee needs SLK's IVES files in order to further investigate that relationship.

The Trustee has no reason to believe that Active Leisure was implicated in the Ponzi Scheme. However, Davis was in control of the funding for Active Leisure and SLK was paid significant legal fees for Active Leisure work. The Trustee is in need of information concerning the work done and the source of the monies used to pay SLK's fees concerning Active Leisure.

---

[5]     Since the Trustee does not know what information any of the records being withheld contains, the Trustee is unable to specify the exact nature of all the potential prejudice that may be experienced at this time.

Pursuant to B.R. 2004, this Court may order the examination of a party or order the production of documents. The disclosures may relate to:

> -the acts, conduct or property or to the liabilities and financial conditions of the debtor, or to any matter which may affect the administration of the debtor's estate.

The Trustee first sought the production of most of the documents forming the subject of this motion more than two (2) years ago. Since then, significant resistance has been interposed to their production. Previously SLK argued that the documents sought in the earlier Motion to Compel should have been requested pursuant to B.R. 34. Now that the Trustee has issued the same requests pursuant to B.R. 34, SLK now claims that those documents are not relevant to the SLK Adversary and need not be produced. As a result, this Court should simultaneously consider whether the documents at issue should be produced under either B.R. 2004 or B.R. 7034.

While the Trustee does not seek to burden the parties or this Court with what appears duplicative document requests, the positions asserted by SLK and the coming deadlines in the recovery actions the Trustee has initiated necessitates seeking the production of relevant documents using parallel paths.

The Trustee requires these documents to fully assess the Ponzi Scheme that Davis unleashed and to understand the relationships between SLK and the Ponzi Companies; Pheasant and the Ponzi Companies; and Pheasant and IVES in order to fully evaluate and prove his cases. Without these documents, the Trustee cannot make informed decisions. The documents sought are also necessary for the Trustee to fulfill his statutory duties and investigate the operations of the Debtors.

Wherefore, based upon the foregoing, the Trustee respectfully requests that this Court grant this Motion and authorize the issuance of the attached subpoena upon SLK.

. Respectfully submitted,

/s/ *Patricia B. Fugée*

Patricia B. Fugée (0070698)
Bruce R. Schrader, II (0039418)
ROETZEL & ANDRESS
One SeaGate, Suite 1700
Toledo, OH 43604
Ph: (419) 242-7985
Fax: (419) 242-0316
E-mail: pfugee@ralaw.com

ATTORNEY FOR THOMAS S. ZAREMBA, TRUSTEE

## NOTICE

Thomas S. Zaremba, Trustee, has filed papers with the Court to seeking an order for a 2004 Examination of Shumaker, Loop & Kendrick, LLP.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).**

If you do not want the court to grant the Motion without a hearing, or if you want the court to consider your views on the Motion, then on or before ten days from the date of service of this motion, you or your attorney must:

File with the court a written response explaining your position at:

U.S. Bankruptcy Court
411 U.S. Courthouse
1716 Spielbusch Avenue
Toledo, Ohio 43604

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

Patricia B. Fugée, Esq.
Roetzel & Andress
One SeaGate, Suite 1700
Toledo, Ohio 43604

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that motion without a hearing.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the parties on the attached service list via regular U.S. Mail, postage prepaid, and upon the following parties via the Court's electronic filing system, on this 2nd day of December, 2008:

Jeffrey Baddeley, Esq.
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio 44114-3485
Email: jbaddeley@bakerlaw.com

Dana M. Farthing, Esq.
Huntington Legal Dept.
519 Madison Ave., 6th Fl.
P.O. Box 1987
Toledo, OH 43603
Email:
dana.farthing@huntington.com

Patrick C. Hall, Esq.
Shannon L. Deeby, Esq.
Stark, Reagan & Finnerty, P.C.
1111 W. Long Lake Road, #202
Troy, Michigan 48098
Email: phall@starkreagan.com

Jason A. Butterworth, Esq.
John N. Childs, Esq.
Brennan, Manna & Diamond
75 East Market Street
Akron, Ohio 44308
Email: jabutterworth@bmdllc.com
jnchilds@bmdllc.com

Henry N Heuerman, Esq.
Eastman & Smith
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, OH 43699-0032
Email:hheuerman@eastmansmith.com

Laurie J. Pangle, Esq.
Anastasia K. Hanson, Esq.
Spengler Nathanson
608 Madison Ave., Ste 1000
Toledo, OH 43604-1169
Email:
lpangle@spenglernathanson.com
shanson@spenglernathanson.com

John J. McHugh, Esq.
McHugh & McCarthy, Ltd.
5580 Monroe St., Suite 200
Sylvania, Ohio 43560-3597
Email: mchugh@mchughlaw.com

William T. Maloney, Esq.
Maloney McHugh & Kolodgy
20 North St. Clair
Toledo, OH 43604
Email: wmaloney@mmklaw.net

Kurt J. Lindower, Esq.
Thomas J. Schank, Esq.
Hunter & Schank Co., L.P.A.
1700 Canton Avenue
Toledo, Ohio 43624-1378
Email: klindower@hunterschank.com
tomschank@hunterschank.com

H. Buswell Roberts, Esq.
Shumaker, Loop & Kendrick
1000 Jackson
Toledo, OH 43624
Email: broberts@slk-law.com

Michael S. Messenger, Esq.
4 Seagate, 9th Fl.
Toledo, OH 43604
Email: mmessenger@rcolaw.com

Deborah J. Michelson, Esq.
Miller Goler Faeges LLP
100 Erieview Plaza, 27th Floor
Cleveland, OH 44114
Email:
Michelson@MillerGolerFaeges.com

Ralph DeNune, Esq.
Lydy & Moan
4930 Holland Sylvania Rd
Sylvania, OH 43560-2149
Email: rdenune@lydymoan.com

Michael A. Shaffer, Esq.
Newcomer, Shaffer, Spangler & Breininger
117 West Maple Street
Bryan, OH 43506
Email: shaffer@nsslawoffice.com

Mark A. Phillips, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square
Cleveland, Ohio 44114-2378
Email: mphillips@bfca.com

Steven R. Smith, Esq
Tammy Geiger Lavalette, Esq
Connelly, Jackson & Collier
405 Madison Avenue, #1600
Toledo, Ohio 43604
Email: ssmith@cjc-law.com

Marvin Robon, Esq.
Cynthia G Tesznar, Esq.
Gregory Elder, Esq.
Barkan & Robon, Ltd.
1701 Woodlands Dr
Maumee, OH 43537
Email: bar-rob@accesstoledo.com
cgt.bar-rob@buckeye-express.com

Richard J. Szczepaniak, Esq.
P. O. Box 501
Toledo, OH 43697
Email: rjs1@buckeye-express.com

Christopher B. Wick, Esq.
Hahn, Loeser & Parks
3300 BP Tower
200 Public Square
Cleveland, OH 44114
Email: cwick@hahnlaw.com

Eugene Canestraro, Esq.
Cline, Cook & Weisenburger
300 Madison Ave., Suite 1100
Toledo, OH 43604
Email:
gcanestraro@email.toast.net

Fan Zhang, Esq.
Wagoner & Steinberg, Ltd.
7445 Airport Highway
Holland, OH 43528
Email:
zhangf@wagonersteinberg.com

John Borell, Esq.
Thomas Palmer, Esq.
Marshall & Melhorn
Four SeaGate, 8th Floor
Toledo, OH 43604
Email: Borell@marshall-melhorn.com

John P. Donahue, Esq.
119 W. 2nd Street
Perrysburg, OH 43551
Email: jpdlaw@aol.com

Kenneth Caputo, Esq.
Josephine Wang, Esq.
Securities Investor Protection Corporation
805 15th St NW, #800
Washington, DC 20005-2207
Email: kcaputo@sipc.org

Craig Singer, Esq.
Williams & Connolly LLP
725 12th Street, N.W.
Washington, D.C. 20005
Email: csinger@wc.com

Thomas Pigott, Esq.
Law Office of Thomas D. Pigott
2828 W. Central Ave., #207
Toledo, OH 43606-3078
Email: tpigott@pigottlaw.com

Gerald Kowalski, Esq.
Cooper & Walinski
900 Adams Street
Toledo, OH 43604
Email:
Kowalski@cooperwalinski.com

Robert N. Bassel, Esq.
P.O. Box T
Clinton, MI 49236
Email: bbassel@gmail.com

Gordon R. Barry, Esq.
930 Spitzer Building
Toledo, OH 43604
Email: GRB1@accesstoledo.com

Steven M Burke, Esq.
Lydy & Moan
4930 Holland Sylvania Rd
Sylvania, OH 43560-2149
Email: sburke@lydymoan.com

John F. Welti, Esq.
Tybo Alan Wilhelms, Esq.
Bugbee & Conkle, LLP
405 Madison Avenue, #1300
Toledo, OH 43604
Email: jwetli@bugbee-conkle.com, ldusa@bugbee-conkle.com

Richard M Kerger, Esq.
Kerger & Associates
33 S. Michigan St., Suite 100
Toledo, OH 43604
Email:
rickkerger@kergerkerger.com,
zclark@kergerkerger.com;
joseereuling@kergerkerger.com

*/s/Patricia B. Fugée*
Patricia B. Fugée

**SERVICE LIST - VIA FIRST CLASS U.S. MAIL**

Sonia U. Chae, Esq.
John R. Lee, Esq.
Securities & Exchange Commission
Midwest Regional Office
175 W. Jackson Blvd., #900
Chicago, Illinois 60604

Teri M. Swanson, Esq.
Securities and Exchange Commission
450 Fifth St. NW
Mail Stop 6-6
Washington, DC 20549-0606

Stephen P. Harbeck
Securities Investor Protection Corporation
805 15th St NW, #800
Washington, DC 20005-2207

Thomas A. Karol, Esq.
U.S. Attorney's Office
Four SeaGate, 3rd Floor
Toledo, Ohio 43604

John M. Carey, Esq.
Robert W. Bohmer, Esq.
Ann M. McCauley, Esq.
405 Madison Ave., Ste. 1900
Toledo, Ohio 43604-1207

Joseph E. Schmall, Esq.
2007 First Avenue, SE
Cedar Rapids, IA 52406-2804

John K. Villa, Esq.
Williams & Connolly LLP
725 Twelfth St., NW
Washington, D.C. 20005

David M. Kahn, Esq.
Office of the Solicitor
U.S. Department of Labor
230 South Dearborn Street, 8th Fl.
Chicago, Illinois 60604

Thomas V. Gebler, Jr., Esquire
Margolis Edelstein
Suite 3300
525 William Penn Place
Pittsburgh, PA 15219

N. Steven Newcomer, Esq.
7130 Spring Meadows Dr. W
Box 673
Holland, OH 43528

135828 \ 110511.0001

**FILED**

**2008 Dec 02 PM 04:35**

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

# Exhibit A

# UNITED STATES BANKRUPTCY COURT

NORTHERN District of OHIO

In re Continental Capital Investment Services, Inc. and Continental Capital Securities, Inc.
Debtor

**SUBPOENA FOR RULE 2004 EXAMINATION**

Case No.* 03-3370

To: Shumaker, Loop & Kendrick, LLP

Chapter SIPA Liquidation

☐ YOU ARE COMMANDED to appear and testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure, at the place, date, and time specified below. A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Roetzel & Andress, One SeaGate, Suite 1700, Toledo, OH 43604 | |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| | |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

## PROOF OF SERVICE

| SERVED | DATE | PLACE<br>1000 Jackson Street, Toledo, OH 43624 |
|---|---|---|
| SERVED ON (PRINT NAME)<br>Shumaker, Loop & Kendrick, LLP | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ____________________
DATE

____________________
SIGNATURE OF SERVER

One SeaGate, Suite 1700, Toledo, OH 43604
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

ATTACHMENT A

## Definitions

"Active Leisure" is defined to include Active Leisure and any subsidiary or parent thereof.

"Americus" includes Americus Communications, Americus Communications Corporation, Americus Communications L.P., Americus Communications No. 31 L.P., Americus Communications LLC, Americus Communications No. 1 L.P., any parent, subsidiary, or affiliate of any of the foregoing and any other client of Shumaker, Loop and Kendrick related in any way to William Davis whose name includes "Americus" or "Americus Communications."

"Interactive Video Education System" is defined to include Interactive Video Education System or I.V.E.S. and any subsidiary or parent thereof.

## Exhibits

Attached as Exhibits 1, 2 and 3 to this Subpoena are indices of files maintained by Shumaker, Loop and Kendrick, LLC. Exhibit 1 is an index of Continental Capital Corporation files. Exhibit 2 is an index of Continental Capital Advisors, Inc. files. Exhibit 3 is an index of Continental Capital Merchant Bank files.

## Documents Requested

Please produce the following:

1) all files listed in Exhibit 1 that are not interlineated;

2) all files listed in Exhibit 2;

3) all files listed in Exhibit 3.;

4) the contents of all files generated during or related to your representation of Americus;

5) the contents of all files generated during or related to your representation of Active Leisure; and

6) the contents of all files generated during or related to your representation of Interactive Video Education System or I.V.E.S.

**Exhibit 1**

**CONTINENTAL CAPITAL CORPORATION**

**INDEX OF FILES**

**(Organized in Reverse Numerical Sequence)**

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| C74550/73909 | J. Management | DCoyle | 08/05/02 | | 1 | | Correspondence;<br>Extra Copies;<br>Attorney Notes;<br>Messenger Transmittals;<br>Pleadings; | |
| C74550/49600 | Acquisition of Sky Investments, Inc. (now Continental Capital Investment Services, Inc.) | TWebb<br>LSpitzer | 01/08/01 | | 1 | | Correspondence;<br>Telecopies;<br>Attorney Notes;<br>Extra Copies;<br>Miscellaneous;<br>Messenger Transmittals;<br>AFSCME Care Plan Info; | |
| | | | | | 2 | Title/Survey/Environmental Matters | Continental Capital Commitment for Title Insurance (2/28/01)<br>Continental Capital Survey (3/12/01);<br>Continental Capital ALTA Survey (3/6/01);<br>Phase I and PCB Analysis; | |
| | | | | | 3 | Jeff Miller Working File | Closing Documents;<br>Continental Capital Corp. Phase One Environmental Site Assessment (August, 2000);<br>Miscellaneous Correspondence;<br>Share Purchase Agreement; | |
| | | | | | 4 | Sherry Ruiz Working File | Continental Capital;<br>Comments on Lease;<br>Wire Instructions – Sky Financial Group;<br>Wire Instructions (Louisville Title); | |
| | | | | | 5 | Closing Documents | Continental Capital Signed Share Purchase Agreement;<br>Continental Capital Partial Assignment of Rights Under Share Purchase Agreement;<br>Continental Capital Certificate of Merger – Sky | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 19 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Financial Group, Inc./Mid AM, Inc. (10/2/98); Continental Capital General Warranty Deed to Bryan Citizens LLC; Continental Capital Conveyance Fee Statement; Continental Capital Assignment to Bryan Citizens LLC; Continental Capital Lease (Bryan/Continental); Continental Capital Lease Guaranty; Continental Capital Corporation Memorandum of Lease; Continental Capital Articles of Organization of Bryan Citizens LLC (1/19/01); Continental Capital Articles of Incorporation (1/3/91); Continental Capital Bylaws; Continental Capital Secretary's Certificate (3/15/01); Continental Capital Certificate of Good Standing (3/12/01); Continental Capital Seller's Affidavit; Continental Capital Marked-Up Commitment for Title Insurance; Continental Capital Settlement Statement; | |
| | | | | | 6 | Closing Transcripts | Correspondence RE Share Purchase Agreement; Closing Transcript of Real Estate Closing; Report of Phase I Environmental Site Assessment; | |
| | | | | | 7 | LFS Working File Regarding Negotiation of Share Purchase Agreement | CCC/Sky Investments – RE Applications by CCC for Regulatory Approval; CCC/Sky Investments – RE Regulatory Approvals; CCC/Sky Investments – RE Further Extension of the Closing Date;' CCC/Sky – RE Extension of the Closing Date; CCC/Sky Financial – Financing Commitments and Agreements; CCC/Sky Financial – Misc. Due Diligence; CCC Sky Investments – Financial Statements of Sky Investments and Sky Insurance; CCC/Sky Financial – Bid Proposal to Sky Financial; CCC/Sky Investment – Form of Warrant Deed for | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 20 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Real Property Closing;<br>CCC – RE Financing for the Sky Investments Purchase;<br>CCC –Sky – RE E & O Insurance Coverage;<br>CCA/Bid for Sky Investments;<br>Focus Report Form X-17A-5; | |
| | | | | | 8 | Drafts of Share Purchase Agreement | CCC/Sky Financial – Drafts of Purchase Agreement Prior to Bid Submission;<br>Continental Capital Envelope with Correspondence and Schedules; | |
| | | | | | 9 | 12/22/00 Share Purchase Agreement with Exhibits and Schedules | Schedule 3.12;<br>Schedule 3.4;<br>CCC/Sky Financial – Exhibits to Signed Purchase Agreement; | |
| | | | | | 10 | LFS Working File on Post-Closing Matters | ~~CCC/Sky Investments – Task Lists for Broker/Dealer Restructuring;~~<br>~~CCC/Sky Investments – RE Post Closing Matters – LFS Notes;~~<br>~~CCC – Proposed Amendment of the Henry County Bank Loan Guaranty Agreement to Include Lusby and Cameron;~~<br>~~CCC/Sky – RE Loan Guarantee Agreement Among Guarantors;~~<br>~~CCIS – General Litigation Matters of CCIS and Indemnity Rights Against Sky Financial;~~<br>~~CCC – RE Good Standing Certificate;~~<br>~~CCC/Sky Financial – Signed Final Share Purchase Agreement;~~<br>~~CCIS – 2001 Audited Financials;~~<br>~~CCS – 2001 audited Financial Statements;~~<br>~~CCIS – RE Termination of Mari Ivan;~~<br>~~CCC – RE Indemnity Claims Against Sky Financial;~~<br>~~CCC/CCIS – RE Indemnity Rights on Claims Arising from Events Prior to Closing;~~<br>~~CCC/Sky Investments – RE Board and Shareholder Resolutions for Closing;~~<br>~~CCC/Sky Investments – RE Selection of a New Corporate Name;~~ | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | CCC RE Ownership of MFI Insurance Agency of Indiana, Inc.;<br>CCC/Sky Investments RE Share Certificates for the New Entities and Transfer of Minute Books;<br>CCC/Sky Investments RE Correspondence to Other Bidders Regarding Continuing Confidentiality Obligation;<br>CCC/Sky Investments RE Financing from Henry County Bank; | |
| | | | | | 11 | LFS Working File Regarding Preparation for Closing | Corporate Authority;<br>CCC Bid for Sky Investments LFS Notes;<br>CCC/Sky Investments Preparation for Closing LFS Notes;<br>CCC/Sky Investments Info From K. Smith Regarding Pre-Closing Reorganizations;<br>CCC/Sky Investments Limited Waiver of CCS Close Corporation Agreement Regarding Financing Security Interests;<br>CCC/Sky Financial Regarding Sellers' Release;<br>CCC/Sky Investments RE Financing from First Union Corp.;<br>CCC/Sky Investments Closing Certificate (Drafts);<br>CCC/Sky RE Transitional Services Agreements;<br>CCC/Sky Financial Issues Regarding Transaction in Preparation for Closing;<br>CCC/Sky Investments SL&K Legal Opinion;<br>CCC/Sky Investments Preparation of Closing Checklist;<br>CCC/Sky Investments RE Broker Dealer Services Agreement;<br>CCC/Sky Financial Regarding Legal Opinions for Closing;<br>CCC/Sky Investments Good Standing Certificates for the CCC Entities;<br>CCC/Sky Financial RE Closing on the Real Estate;<br>CCC/Sky Investments Regarding Bank Account Switch Over;<br>CCC/Sky Investments Regarding E&O Insurance | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 22 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Policy and Net Capital Calculation; GCG/Sky – Henry County Bank Loan Commitment; GCG/Sky Investments – Good Standing Certificates for the Acquired Companies; GCG – Code of Regulations; | |
| | | | | | 12 | Closing Transcripts for Stock Purchase Transactions | 1. Share Purchase Agreement Dated December 22, 2000 (Without Exhibits and Schedules);<br>2. Assignment of Shares of Sky Investments, Inc.;<br>3. Assignment of Shares of Sky Insurance Agency, Inc.;<br>4. Certification and Amendment of Representations and Warranties by Sellers;<br>5. Confirmation of Representations and Warranties by Sellers;<br>6. Confirmation of Representations and Warranties by Sky Investments and Sky Insurance Agency;<br>7. Confirmation of Representations and Warranties by Buyer;<br>8. Broker Dealer Services Agreement;<br>9. Agreement for Transitional Services and Benefits;<br>10. Name License Agreement;<br>11. Third Party Consents Required by Buyer;<br>12. Release Agreement by Sellers;<br>13. Resignations of Directors of Sky Investments and Sky Insurance Agency;<br>14. Good Standing Certificate and Certified Articles for Sky Investments;<br>15. Good Standing Certificate and Certified Articles for Sky Insurance Agency;<br>16. Good Standing Certificate and Certified Articles for Buyer;<br>17. Cetificate of Secretary of Sky Financial Group (Without Attachments);<br>18. Certificate of Secretary of Insurance Holding Company (Without Attachments);<br>19. Opinion of Counsel to Sellers;<br>20. Opinion of Counsel to Buyer<br>21. Promissory Note of Sky Investments to Picton | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cavanaugh, Inc.;<br>22. Documentation Concerning Settlement on Required Minimum Net Capital of Sky Investments and Sky Insurance Agency; | |
| | | | | | 13 | RMJ File – Financing Documents | Closing Transcript - $1.5 Million Loan to CCC by the Henry County Bank;<br>Henry County Bank – Final Loan Documents;<br>Henry County Bank;<br>Corporate Authority;<br>Preclosing Deliveries to First Union;<br>First Clearing Corporation Revolving Line Opinion;<br>Closing Checklist;<br>First Clearing Corporation First Clearing Opinion;<br>First Clearing Corporation;<br>First Clearing Corporation Closing Checklist (Continental);<br>First Clearing Corporation Acknowledgements and Agreements;<br>First Clearing Corporation Guaranty (Davis) (Continental);<br>First Clearing Corporation Promissory Note (Continental);<br>First Clearing Corporation Guaranty (Faulkner) (Continental);<br>First Clearing Corporation Security Agreement (Continental);<br>First Clearing Corporation Legal Bill (Continental);<br>Loan Guarantee Agreement; | |
| | | | | | 14 | RMJ File – Corporate Authority Documents | Amendment to Articles of Incorporation of Continental Capital Corporation;<br>Waiver of Close Corp Agreement;<br>Certified Articles, Good Standing, CCC Bylaws;<br>RMJ Notes;<br>Pre-Closing Deliveries to Henry County Bank;<br>Building Inspection;<br>Attorney Notes;<br>Stock Option Agreement;<br>Resignation of Agent for Pipe Creek Channel | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Association; Continental Capital Amendment; | |
| | | | | | 15 | | Continental Capital Corporation Transcript for Purchase of Bryan, Ohio Real Property (221 N. Main Street, Bryan, Ohio); | |
| | | | | | 16 | LFS File RE: Termination of Robert Gioia | CCC RE Termination of Bob Gioia; CCC RE Employment Agreement for R. Gioia; CCC Meeting with W. Davis and W. Faulkner 12/17/01; | |
| C74550/35771 | UMB Bank The Toledo Clinic, Inc. Joseph Roshe, MD | PSilverman | 10/28/94 | 10/24/03 | 03-703 | | Correspondence; Drafts; Miscellaneous; Subscription Agreements; Attorney Notes; Messenger Transmittals; Continental Capital Equities; UMB Proposed Tolling Agreement; Ask/Done Chart; Americous; Middlebeld II; Arbor Atrium; Capital Medical; Centrum Industries; J. Miller Comments; Americus Indenture; Note; Final Executed Settlement Agreements; Financial Statement; | |
| C74550/32454 | Continental Capital Investment Limited Partnership | TWebb EBritton LMaxwell | 01/26/93 | 10/24/03 | 03-704A | | Correspondence; Telecopies; Attorney Notes; Miscellaneous; Bushwood Partnership; Confidential Private Placement Memorandum Capital; Luxbury Subscription Agreement; Capital Distribution List; | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Instructions to Broker; Capital Ltd. Signature Page; MEP Notes; Drafts of Confidential Private Placement Memorandum; Drafts of Partnership Agreement; Samples: Northwest Ohio Venture Ltd. Partnership; Northwest Ohio Confidential Private Placement Memorandum Sample; Memorandum - Common Trust Issues; Bound Copy of Continental Capital Management, Inc. Investment Philosophy; Confidential Private Placement Memorandum; Tax Opinion; | |
| | | | | | 03-704B | | Investment Advisers Act; Continental Capital/James Meketa Associates TRW Notes; Continental Capital - RH Investment Company Issues; James Meketa Associates, Inc.; Miscellaneous Attorney Notes and MEP Memorandum; Incorporation Documents; Rough Drafts of Private Placement Memorandum; TRW Copies; Continental Capital Confidential Offering Summary and Miscellaneous Notes; | |
| | | | | | 03-704C | | Partnership Agreement; Continental Capital Investment Limited Partnership; Bound Confidential Private Placement Memorandum; Correspondence to William Davis Dated 03/30/93; Draft Documents; | |
| C74550/30693 | James Meketa Associates, Inc. | TWebb | 01/13/92 | 11/15/94 | 94-1140 | | Attorney Notes; Memorandum; Common Trust Fund Drafts of Memorandum; Northern Trust No Action Letters; Miscellaneous Articles; | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 26 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Continental Capital Shareholdings;<br>Exemption 3(C)(1);<br>James Investment;<br>MEP Notes RE Common Trust Fund;<br>Pass Through Entity;<br>SEC No Action Letters – Common Trust Fund;<br>Form ADV;<br>Marketing Services Agreement;<br>Referral Fees – Investment Advisers Act;<br>Common Trust Fund Annual Report Huntington;<br>Citizens Federal Information Golden Rainbow Fund; | |
| C74550/29482 | Fremont Plastics Products, Inc. Financing | TWebb DRectenwald | 04/23/91 | 06/07/94 | 94-783A-I | See 94-783 A-I Attached | 94-783 A-I Attached | |
| C74550/28962 C74550/39519 (Combined) | Northwest OH Venture | TWebb DRectenwald | 01/11/91 | 04/11/96 | 96-219A | | Attorney Notes Contents of File No. 39519;<br>Correspondence;<br>Miscellaneous;<br>Escrow Agreement;<br>Securities & Exchange Commission (Form D);<br>Robon Transaction;<br>Private Placement Memorandum;<br>Bound Copies of Confidential Offering Summary<br>$1,980,000; | |
| | Richard Torchia, M.D. | PSilverman | 10/11/96 | 08/27/01 Transferred to Closed File | 96-219B | Drafts of Offering Summary | Private Placement Memorandum;<br>Bound Copy of Confidential Offering Summary;<br>Blacklined Drafts of Miscellaneous Documents;<br>Northwest Ohio Venture Fund Offering Documents;<br>Northwest Ohio Venture Fund DJR Notes;<br>1/9/91 Draft of Offering Summary;<br>1/11/91 Draft of Summary;<br>Continental Venture Fund Michigan Filing;<br>Form 3-W Continental Venture Fund;<br>Form D Confidential Venture Fund; | |
| C74550/28790 | Railcar Financing | MMcGowan DRectenwald | 12/07/90 | 11/08/94 | 94-1025 | | Attorney Notes;<br>Miscellaneous;<br>Decision Interstate Commerce Commission;<br>Lease Contract;<br>DJR Integration Notes | |
| C74550/28529 | Crescent Manufacturing Company | GChapman | 10/08/90 | 10/18/91 | 91-2336 | | Correspondence; | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 27 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | MMcGowan<br>DRectenwald | | | | | Attorney's Notes;<br>Telecopies;<br>Memorandum of Intent;<br>Memorandum of Lease (Drafts) | |
| C74550/27488 | American Handling Equipment Company Acquisition | MMcGowan<br>DRectenwald | 2/14/90 | 02/06/93 | 93-360 | | All files given to client on 2/1/93, except File No. 23<br>Volume 23 Contents<br>Miscellaneous Correspondence;<br>Receipt for Files;<br>Fully Executed Joint CCA;<br>Environmental Assessment Report;<br>SL&K Opinion;<br>CLR Notes;<br>Northpoint – DJR Notes Buyout;<br>Hindall -- Contract Matter DJR Notes;<br>Due Diligence Notes;<br>Bound Copy of Documents Relating to the Acquisition of Ten Shares of Common Stock;<br>Ohio Blue Sky;<br>DJR Notes;<br>American Handling – DJR Qualification Notes;<br>White & Merillat Agreement;<br>Acknowledgement & Waiver;<br>Confidential Offering Summary;<br>Bound Copy of Documents Relating to the Acquisition of Ten Shares of Common Stock; | |
| C74550/27112 | Stock Offering | TWebb | 11/29/89 | 02/16/91 | 96-231A-D | See 96-231 A-D Attached | 96-231 A-D Attached | |
| C74550/26503 | Venture Capital Fund | TWebb | 07/13/89 | 04/11/96 | 96-227A | | Correspondence;<br>Telecopies;<br>Attorney Notes;<br>Tom Kress;<br>Management Agreement;<br>Regulation D – Drafts;<br>Miscellaneous;<br>CPPM (Drafts);<br>Management Agreement (Drafts);<br>Offering Circulars;<br>Questionnaire (Drafts);<br>Continental Venture Fund – Tax Research - UBTI | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | 96-227B | | EQUUS documents including prospectus | |
| C74550/24803 | Ann Arbor Syndication | TWebb | 06/15/88 | 02/02/93 | 93-144 | | Correspondence;<br>GPPM;<br>Notes, Miscellaneous;<br>Agency Agreement;<br>Escrow Agreement | |
| C74550/24593 | Hembelden, Thomas N. | TWebb | 04/25/88 | 07/13/92 | 92-583 | | Correspondence;<br>Telecopies;<br>Arbitration;<br>Notes, Miscellaneous;<br>X-Copies;<br>Pleadings;<br>Release | |
| C74550/24403 | Acquisition of Technology Leaders, Inc. | GChapman<br>RBraun<br>DRectenwald<br>MMcGowan | 03/11/88 | 11/25/91 | 91-2600 | | Correspondence;<br>Notes, Miscellaneous;<br>Dunn & Bradstreet;<br>Technology Leaders: MSM Notes;<br>Engagement Letter;<br>Memorandum of Intent (Drafts);<br>Memorandum of Intent;<br>Tax Return (1986) | |
| C74550/24402 | Acquisition of Vail Radio Station | GChapman<br>RBruan<br>DRecetnwald<br>MMcGowan | 03/11/88 | 10/18/91 | 91-2362 | | Correspondence;<br>Draft #1 Asset Purchase Agreement;<br>Asset Purchase Info | |
| C74550/23008 | CD Program | TWebb<br>MMcGowan | 05/05/87 | 02/08/93 | 93-425 | | Correspondence;<br>Notes, Miscellaneous;<br>Mason Greene – Continental | |
| C74550/22534 | Continental Capital Corporation v. Behard Nakhair – Tol. Muni. Ct. | MBriley<br>PSilverman | 01/27/87 | 02/11/91 | 91-258 | | Correspondence;<br>Pleadings;<br>Notes, Miscellaneous;<br>X-Copies;<br>Contracts;<br>Documents;<br>Legal News Docket | |
| C74550/19912 | Venture G.P., Inc. | DWicklund<br>PSilverman | 07/30/85 | 10/25/89 | 89-922A | | Correspondence;<br>Pleadings;<br>X-Copies; | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Notes, Miscellaneous;<br>Pleadings Bankruptcy Court – 86-02370-B;<br>Papers re: Titan Technologies Bankruptcy | |
| | | | | | 89-922B | | Legal Research – Indispensable Parties;<br>Titan Bankruptcy;<br>Private Placement Memorandum;<br>Michigan Limited Partnership Act;<br>Drafts;<br>October 31 Attachments;<br>Legal Research – Default;<br>Titan Bankruptcy;<br>Draft Orders;<br>Offering Memorandum Continental/Venture | |
| C74550/19602 | A.G. Edward & Sons, Inc. | GChapman<br>PSilverman | 05/14/85 | 12/17/91 | 91-2700 | | Correspondence;<br>Brokerage Agreements;<br>Legal Research – Non-Compete Clauses;<br>Kaser Letters and Transfer Forms;<br>Notes, Miscellaneous;<br>Drafts;<br>Arbitration Procedures;<br>Notes – Voided;<br>Release Prepared by Edwards;<br>Notes, Calls and Meetings: Baker/Venture | |
| C74550/19546 | Travis Associates | GChapman<br>PSilverman | 04/29/85 | 11/13/91 | ?? | | No Contents in File when Closed | |
| C74550/19369 | Formation of REIT | GChapman<br>LSpitzer<br>MPisanelli<br>PChubb | 03/19/85 | 08/11/90 | 90-815A | | Continental Capital Equities, Ltd. (9/18/85) – PAS<br>Notes;<br>REIT Law Reform;<br>Miscellaneous Financial Information;<br>LAW Notes;<br>Continental Capital - Formation of a REIT – MEP<br>Notes;<br>Action by Incorporator;<br>Acceleration Letters;<br>Appraisals;<br>Appraiser's Consent;<br>Incorporation of Continental Capital Equities, Inc.;<br>Articles – Asset Managers, Inc.; | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Background;<br>Continental Capital Equities, Inc. 5-9-86 Audit;<br>Printing Information;<br>Advisory Agreement;<br>Incorporation - Asset Managers, Inc.;<br>Continental Equities – Conversion to Limited Partnership | |
| | | | | | 90-815B | | Correspondence 3/20/85 to 12/30/85;<br>Correspondence 12/31/85 to 12/31/86;<br>Correspondence;<br>Notes, Misc. | |
| | | | | | 90-815C | | Continental Capital Equities, Inc. – 12-31-86 Audit;<br>By-Laws;<br>Dividend Reinvestment Plan;<br>Dividend Reinvestment Plan;<br>DRIP;<br>X-Copies;<br>Financial Information;<br>Guide 5;<br>Memorandum;<br>SEC Comment Letter 12-16-86;<br>NASAA Reit Provisions;<br>NASAA Guidelines;<br>NASD;<br>Offer to Purchase (Westland Shopping Center);<br>Powers of Attorney;<br>Questionnaires;<br>Recognition Agreement;<br>Resolutions 6/24/85;<br>Sales Material;<br>Sales Materials;<br>Form S-11 (9/25/85);<br>SEC Comment Letter 10/23/85;<br>Asset Management, Inc. – Independent Constructor Status;<br>Escrow Agreement | |
| | | | | | 90-815D | | Asset Managers;<br>Form S-11 (executed); | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Exhibits to Form S-11;<br>Amendment to No. 1 to Form S-11 (executed);<br>Final Prospectus;<br>424(b) Prospectus;<br>General Discussion of Implications of "Going Public";<br>Supplemental Blue Sky Memorandum 5-7-86;<br>Registration Drafts;<br>Sales Materials | |
| | | | | | 90-815E | | SEC Transmittal Letter Amendment No. 1;<br>SEC Comments Letter dated 10/23/85;<br>Oberer Letter 1/22/86;<br>Oberer Letter 1/20/86;<br>Oberer Letter January 10, 1986;<br>SEC Letter of January 6, 1986;<br>SEC Letter 1/9/86;<br>Oberer Letter of January 9;<br>December 31, 1985 letter – response to second SEC Comment Letter;<br>Letter to Paul Oberer – Jan. 2, 1986;<br>Inserts telecopied to SEC;<br>Transmittal Letters – Drafts;<br>SEC Comment Letters;<br>Con. Cap. – Going Public – Notes;<br>Schedule of Documented Brokerage Rates;<br>Continental Capital | |
| | | | | | 90-815F | | Form S-11 (Conformed);<br>Amendment No. 1 to Form S-11 | |
| | | | | | 90-815G | | Form W-9;<br>Acceleration Requests;<br>Accountant's Consent;<br>Acct. Signature Pages;<br>Agency Agreement;<br>Continental Capital – Amendment to Advisory Agreement;<br>By-Laws Drafts;<br>Articles – Drafts;<br>Continental Capital By-Laws Amendment; | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Directors;<br>Escrow Agreement – Drafts;<br>Financial Statements (12/6/85);<br>ERISA changes;<br>Indemnification Agreement;<br>Michigan Business Corporation Act;<br>Bank Signature Pages for S-11 Amendment No. 1 – CNCAP #19369;<br>Signature Pages;<br>Tax Opinion;<br>Form S-11-Drafts;<br>Cont. Cap. REIT – EXP. Issues;<br>Extension of Offering;<br>Escrow Agreement | |
| | | | | | 90-815H | | (No labeled materials) | |
| | | | | | 90-815I | | Form S-11 Drafts | |
| | | | | | 90-815J | | Changed Pages Cont. Cap. Equities;<br>Prospectus Draft 12/27/85;<br>Prospectus Draft;<br>Amendment No. 1 – original;<br>Draft (a/GCC – Changes) 11/15/85;<br>Drafts MEP and LAW Changes | |
| | | | | | 90-815K | | Draft w/MEP Changes;<br>Draft 12/5/85;<br>Draft 11/13/85;<br>Draft 11/15/85 | |
| | | | | | 90-815L | | Draft (MSM Changes) 11//6/85;<br>Draft GLC Changes 1/6/85 | |
| | | | | | 90-815M | | Form S-11 | |
| | | | | | 90-815N | | (loose documents – no labels) | |
| | | | | | 90-815O | Contain one copy of all filed documents | Exhibit to Form S-11 Registration Statement | |
| | | | | | 90-815P | | Blue Sky/Michigan – MEP Notes;<br>Notes;<br>Blue Sky/Florida;<br>Blue Sky/Illinois;<br>Continental Capital Equities, Inc. – Blue Sky/Michigan Preorganization Subscription; | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 33 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Ohio Blue Sky – x-reference sheet;<br>Certificate of Incorporation;<br>Blue Sky/Ohio;<br>Ohio Registration 2/2/87;<br>Dealer Agreement;<br>Executed Escrow Agreement;<br>Power of Attorney;<br>Form of Preferred Stock Certificate;<br>Preliminary Blue Sky Memorandum;<br>Press Release;<br>Prior Performance Tables – Continental Capital;<br>Specimen Stock Certificates;<br>NASD Correspondence;<br>Registration Statement Drafts - MEP | |
| | | | | | 90-815Q | | Resolution (SEC);<br>Preliminary Prospectus;<br>PROOF (marked to show changes from 5-11 to Amendment #1) | |
| | | | | | 90-815R | | Exhibits to Form S-11 Registration Statement | |
| | | | | | 90-815S | | Leases sent by Management;<br>Correspondence with SEC;<br>Notes re: discussions with SEC, NASD and Stats;<br>Legal Research on Duty to Supplement;<br>Miscellaneous;<br>Tax Sects – MSM mark-up;<br>GLC and LAW Notes;<br>Originals of Exhibits;<br>Markups of Prior Performance Tables for Mark Wagner;<br>Certificate of Subscription renewed by Escrow Agreement Agent 10/24/86 and 11/14/86;<br>June '86 10-Q for Con. Cap.;<br>Drafts of Supplement;<br>Final Draft-Post-Effective Amendment No. 1 | |
| | | | | | 90-815T | Post-Effective Amendment Docs 1 and 2 | Drafts P/E Amendment No. 1;<br>Exhibits – P/E Amendment No. 1;<br>SEC Comment Letter 12/16/86;<br>Post-Effective Amendment No. 2 Drafts; | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 34 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Supplemental Response to Oberer – 12/19/86;<br>Letter to Dave Bell 12/19/86;<br>Letter to Daly – 12/22/86;<br>LAW Notes;<br>Confirmation of Shares Sold – Escrow Agreement;<br>P/E Amendment No. 2 Drafts;<br>Revised Tax Opinion | |
| | | | | | 90-815U | Post-Effective Amendment No. 3 | Agency Agreement Extension;<br>Supplement No. 1 to the Prospectus;<br>Post-Effective Amendment No. 3;<br>Agency Agreement Extension;<br>Amended Escrow Agreement | |
| | | | | | 90-815V | Supplement No. 1 | Supplement No. 1 – Roogar's Drafts;<br>Supplement No. 1 Final;<br>Supplement No. 1 marked changes from Post-Effective Amendment No. 3 | |
| | | | | | 90-815W | | Form 10-Q;<br>Form 10-K;<br>By-Laws | |
| | | | | | 90-815X | Contain one copy of all filed documents | Post-Effective Amendment No. 1;<br>Post-Effective Amendment No. 2;<br>Post-Effective Amendment No. 3 | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| C74550/18103 | General Business Matters | TWebb<br>MMcGowan<br>LSpitzer | 08/24/84 | | 1 | | Correspondence;<br>Telecopies;<br>Attorney Notes;<br>X-copies;<br>Continental Capital Corporation – partial copy of organizational records;<br>U.S.B.C. Riker Industries;<br>Dave Kaser Matter;<br>Miscellaneous;<br>Stockholder Buy/Sell;<br>Messenger Transmittals;<br>Receipt for Minute Books;<br>JNM Notes Re: Henry County Bank;<br>Continental Capital—Stevens: JNM File and Notes;<br>Special Shareholder's Meeting | |
| | | | | | 1A | ~~Old Correspondence 5/84 thru 2002~~ | ~~2-14-89 thru 6-6-02;~~<br>~~May 1984 thru Dec. 1993~~ | |
| | | | | | 1AA | ~~Correspondence~~ | ~~Jan. 14, 1994 thru May 29, 2002~~ | |
| | | | | | 1AAA | Correspondence | Correspondence | |
| | | | | | 2 | | PAS's Notes;<br>PSC's Notes;<br>Prescott Employment Contract;<br>Escrow Agreement;<br>Stop 'N Lock PPM;<br>Tyson's Pike Seven Plaza Associates PPM;<br>Request for Consent to Transfer of Second Mortgage Notes;<br>Purchase Questionnaire/Purchase Representative Questionnaire (Stop 'N Lock);<br>Instructions to Subscribers of Notes;<br>Tyson's Pike Original Subscription Agreement;<br>Subscription Agreement Markups (Tyson's Pike);<br>DJR Notes re: Col. Rescission of Carport LLP.;<br>Continental Capital's Clearing Agreement;<br>Stenger Matter;<br>Continental Capital Agreements;<br>Continental Capital Insurance/Life Quote Amendment; | |



06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 36 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Life Quite;<br>License Info;<br>DJR Notes re: McGhee Licensing Issues;<br>Drafts of McGhee Letter | |
| | | | | | 3 | Toledo Clinic Matters | ERISA Provisions – Offering Circular;<br>Confidentiality Agreement | |
| | | | | | 4 | | Establishment of Ins. Corp.;<br>Continental D/O Questionnaire;<br>William Creekmore Sales Agency Agreement – 1984;<br>Sales Agency Agreement;<br>Asset Purchase Agreement;<br>Continental/Broadcort;<br>NASD Audit Checklist;<br>Churning;<br>Stock Holder Buy-Sell Agreement;<br>~~CC-NASD Letter August, 1991 – DJR Notes;~~<br>~~CC-Lathrop~~ | |
| | | | | | 5 | | Burns/Wender Transaction;<br>Continental Investments #2 Partnership AHEC, Inc.;<br>Continental Investments #1 Partnership Meilink/Hercules (M-H);<br>ACME;<br>DJR Notes re: Leasing Co.;<br>C.C.C. Ohio Filings;<br>Agreement;<br>DJR Notes re: Insurance Laws;<br>Fictitious Name Filing – Continental Investments #1 an #2 Partnership;<br>Form 3-0;<br>Subordinated Loan Agreement;<br>ByLaws;<br>~~Termination of Division Order – McGhee;~~<br>~~DJR Notes re: Arizona Blue Sky;~~<br>Continental Capital's Written Supervisory Procedures;<br>~~DJR Investment Advisor Research for Fee Split Agreement;~~ | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Continental Capital Corporation Audit Request Letter for Period Ended 12-31-01 | |
| | | | | | 6 | Audits are in this file | Continental Capital Corporation and all its subsidiaries Audit Letter;<br>Bill Davis 71-81 Audits;<br>02-28-87 Audit;<br>1990 Audit Responses;<br>GTB Collection;<br>1983 Annual Report;<br>Drafts;<br>Continental Capital Blue Sky;<br>Zahn Matter DJR Notes;<br>DJR Notes Bales/Bendy Matter;<br>Continental Capital Old Incorp. Docs.;<br>Continental Capital Corporation GLC;<br>Continental Capital BLD Incorp. Docs.;<br>Continental Capital Corporation Audit Letter Request for 2/28/98; Due Date: 4/10/98 | |
| | | | | | 7 | | Drafts of Offering Docs;<br>Form D;<br>DJR Notes;<br>Drafts of our Docs;<br>CC NASD LTR Aug. 1991 DJR Notes;<br>Securities Filings;<br>Dave Kaser;<br>Continental Capital/Marketing;<br>CC-Second Stock Offering;<br>Cont'l Capital Chart;<br>Continental K Bills;<br>Contents from #17009;<br>Code of Regulations | |
| | | | | | 8 | LFS Working File | Western Reserve Capital Management;<br>Continental Capital Referral Contract and James Meketa Associates, Inc.;<br>Continental Capital Advisors Initial Form ADV Filing;<br>Special Toledo Hospital Advisory Agreement;<br>St. V's Columbus Circle Investment Trust; | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 38 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Investment Adviser Registration Package; Continental Capital re letters to auditors; Continental Capital—alleged 10b-9 violation; | |
| | | | | | 9 | LFS Securities Law Compliance | Continental Capital Securities—Broker/Dealer Issues in Sale of Merchant Bank Units; Continental Capital—Notes RE Broker-Dealer Registration issues; SEC Guidelines on B-D Compliance; Continental Capital Securities Law Compliance Issues—Extra Copies; Continental Capital—Proposal for General Legal Representation; | |
| | | | | | 10 | LFS Working File #2 Securities Law Compliance Matters (Investment Advisor Registration) | Ohio Investment Advisor Forms; Continental Capital—RE Compliance with Investment Advisers Regulatory Requirements; Ohio Investment Advisor Registration of Continental Capital Management, Inc.; Continental Capital RE Investment Advisor Registration—Misc. Extra Copies; Investment Advisor Registration Package; | |
| | | | | | 11 | LFS Working File RE Stock Grants and Stock Options to Employees and Others | Options for Officers, Directors, Employees and others; CCC – RE Sky Investments Stock Option Plan; CCC – Planning for Stock Options and Stock Grants; CCC – RE Explanatory Memos for the Stock Option Agreement; CCC – New Form of Corporate Stock Certificate; CCC – Sample Stock Plan and Employment Agreement Per Request of W. Faulkner; CCC – Stock Grant to R. Gioia and Employee Stock Option Pool; | |
| | | | | | 12 | LFS Working File—Corporate Organizational Matters | CCC—RE Corporate Name Changes; CCC—Miscellaneous General Corporate Matters; CCC—Sky Investments—RE Organizational documents of the Companies; CCC—TM Search for "Western Reserve"; CCC—Table of Ownership and Management | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 39 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | structure; GGIS — RE Use of Sky Investments Name by Sky Financial Group; GGIS — Election of New Directors and Officers (Spring 2002); CCC — Miscellaneous Records RE Board Minutes; CCC — Preparation for the 7/12/01 Board Meeting; CCC — RE Payment dispute with Stan Beaver's Estate; CCC — Takeover Attempt by R. Franklin; CCC — RE Employee Termination Issue; CCC — Planning for the 4/3/01 Board Meeting; CCC — Notes from Miscellaneous General Inquiries; CCC — RE Shareholders Meeting — May 2001; CCC — RE Evaluation of CCMB Situation; CCC — Indemnity Agreements for T. Williams and G. Kriegel; CCC — General Issues RE CCMB and CCA; CCC — Change of CCS to a $5,000 BD; CCC — Tax Authorities of MSM; CCC — Planning for Corporate Restructuring in Connection with the Sky Closing; | |
| | | | | | 13 | General Securities Law and Financing Transaction Matters | CCC — 10/26/01 Memo RE Treatment of Promissory Notes as Securities; CCC — UCC Notice of a Security Interest in Active Leisure Investors and Proceeds; CCC — Proposal for a Bank Loan with a Guarantee by Paul Ormond; CCC — Forms for Note Financing Transactions; Continental Capital — $100,000 Gehrisch Loan Transaction; CCC — Recommended Form of Cognovit Promissory Note; CCC — RE Proposed Organization of Investment Fund for Public Offering of Debt Instruments; CCC — Cross Guaranty Agreement Relating to First Federal of Defiance Indebtedness; | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | CCC—Forms of Cross-Guaranty Agreement;<br>CCC—Cross-Guaranty Agreement Among Guarantors (Active Retail Loan);<br>CCC—Recommended General Form of Guaranty of Loans to CCC;<br>CCC—RE Loan Transaction with Joe Braden;<br>Continental Capital Corporation—Proposed Private Offering of Preferred Stock;<br>CCC—RE Private Offering of Common Stock;<br>CCC—Broker/Dealer Status of Affiliates of an Issuer;<br>CCC—RE First Clearing Corporation Investment Advisory Services; | |
| | | | | | 14 | Amendments to Organizational Documents | CCC—Amendment of Articles to Increase the Authorized Number of Shares;<br>CCC—Organizational Documents;<br>CCC—Proposed New Joint Close Corporation Agreement (LFS Notes)<br>Amended and Restated Code of Regulations; | |
| | | | | | 15 | Restructuring of Documentation for the SMR Indebtedness | Loan from the SMR Group, LTD to Continental Capital Corporation April 19, 2002;<br>CCC/SMR—RE Correction of the Corporate Guaranty Document;<br>CCC—RE SMR Financing—Proposed Restructuring;<br>CCC—SMR—4th Draft of Loan Documents;<br>CCC/SMR—3rd Set of Draft SMR Documents;<br>CCC/SMR—2nd Set of Proposed SMR Documents; | |
| | | | | | 16 | Loan Default Claim by Henry County Bank | CCC—RE Henry County Bank Credit Reporting;<br>CCC—Extended Forbearance Agreement with The Henry County Bank;<br>CCC—Collection Action by The Henry County Bank; | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 41 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | 17 | Proposed Financing by Institutional Investors (No Transactions Completed) | GGC – RE Bridge Note Financing of CGC – Proposed Financing by Commodore Factors Corp.; CCC – RE Financing by Greenfield Bldco; CGC – RE Transaction with Capital Securities of America; | |
| | | | | | 18 | LES Notes RE Resolution of Threatened Claim by AFL-CIO Food, Beverage Dealers Trust Fund | CCC – RE Note Issuance to AFL-CIO Food and Beverage Dealer's Trust Fund; | |
| | | | | | 19 | Purchase Offer for the Active Leisure Business | GGC – Purchase Offer for the Active Leisure Business | |
| | | | | | 20 | Response to Inquiry of Ohio Division of Securities Regarding Notes of Continental Sports Management, LLC | CCC – Inquiry by Ohio Division of Securities Regarding Note Issuance Transactions; Documents Provided by Continental Capital; | |
| | | | | | 21 | Proposed Settlement with Ann Lammers Concerning Investment Dispute | CCC – Settlement with Ann Lammers – LES Notes; | |
| | | | | | 22 | Notes on Billing Matters | CCIS and CGC Billing Matters – Limitations on Scope of Representation; CGC – RE Billing Issues; CCIS – Billing Matters; CCC – RE Billings and Terms for Payment; | |

**Exhibit 2**

CONTINENTAL CAPITAL ADVISORS, INC.

INDEX OF FILES

(Organized in Reverse Numerical Sequence)

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| C74400/31060 | General Corporate | TWebb | 03/25/92 | | 1 | | Correspondence; Telecopies; Cont'l Capital Advisors, Inc. Form ADV; ADV – Michigan Filing Requirements; Investment Advisory Agreements – Final; ADV as filed; 7/92 Amendments to ADV; Cont'l Capital Investment Advisory Agreement; Investment Advisory Agreements 6/24/92; Investment Advisory Agreement 6/19/92; 6/26/92 Investment Advisory Agreement; Agreement and Certificate; Private Placement | |
| | | | | | 2 | LFS File RE Corporate and Securities Law Matters; | CCA – RE Letter to RJR Investors Regarding Status and Need for Additional Financing; CCA – Claim by J Management Company; CCA – RE Continental Sports Management – Limited Offerings of Paragon Shares in Ohio and Michigan; CCA – RE Offering of Paragon Sports Management; CCA – Guarantee for Indebtedness of RJRI to Jay Management Company; CCA – RE Placement Agent Agreement with Creative Management Group LLC; CCC – Sample Placement Agreements for a Private Offering; CCC – Storage Charge Claim Relating to Damons of Peabody;; CCC – Another Draft of an Engagement Agreement with a Customer; | |

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 44 of 130

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys On File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | CCA – Engagement Agreement with Just Talk; CCA – Engagement Agreement with Photonics Systems, Inc.; CCA/Engagement Agreement with Not Your Average Joes, LFS Notes; CCA – RE Planning for Organization for a New Investment Fund (April 2001); CCA – Guaranty of Indebtedness of the McMasters; CCA – RE Brufio Fund – LFS Notes; CCMB – Prior Advice RE Offering Memo and Organizational Documents; Continental Capital - re: Commodity Pool Operation Question | |

**Exhibit 3**

CONTINENTAL CAPITAL MERCHANT BANK, LLC

INDEX OF FILES

(Organized in Reverse Numerical Sequence)

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys on File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| C74665/72877 | Continental Sports Management | LSpitzer | 01/11/02 | | 1 | | | |
| | | | | | 2 | LFS File Regarding Continental Sports Management | CCMB/CSM Regarding Line of Credit by CCMB;<br>CCMB Regarding Continental Sports Management Proposed CCMB Debt for Equity Exchange | |
| C74665/47537 | USA Democracy | LSpitzer<br>JMacKay | 02/04/00 | 12/31/03 | 1 | | Correspondence;<br>Telecopies;<br>Miscellaneous;<br>Due Diligence Materials to Voter.com. -- Correspondence of April 25, 2000<br>Closing Checklist;<br>Settlement Agreement & Intercreditor and Escrow Agreement;<br>Promissory Note (to Sapient Corporation for acquisition of software);<br>Pledge & Security Agreement;<br>Continental Capital Merchant Bank/Sapient/USA Democracy;<br>Asset Purchase Agreement;<br>Pleadings; | |
| | | | | | 2 | LFS Working File | Sapient Complaint Against USAD;<br>Continental Capital/RB USA Democracy LLC;<br>CCMB – RB Billing Matters;<br>CCMB/USAD -- Purported Share Transfer by Don Baptiste;<br>CCMB/USAD – Merger of USAD LLC into USAD, Inc.;<br>CCMB/USAD – Revised Proposal to Speakout.com;<br>CCMB/USAD – USAD Bylaws<br>USAD Offering Memo;<br>USAD LLC Operating Agreement; | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys on File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | CCMB/USAD – RE Board of Directors Matters (USAD);<br>CCMB/USAD – RE Potential Claims Against Baptiste and Repurchase of Shares;<br>CCMB/USAD – RE a Possible Bankruptcy Filing Against USAD; | |
| | | | | | 2A | LFS Working File | CCMB/USAD – RE Negotiated Settlement with Sapient Corporation;<br>CCMB/USAD – Current Working Folder;<br>CCMB/USAD – RE Final Negotiations with Sapient RE Settlement Terms;<br>CCMB/USAD – RE Revised Settlement Proposal to Sapient;<br>CCMB/USAD – Evaluation of the Legal Nature and Effect of the Sapient Title Retention Agreement;<br>ISAD – Digex Lawsuit; | |
| | | | | | 2B | LFS Working File | One Stapled Correspondence One Stapled Email<br>CCMB/USAD – Due Diligence Information from Voter.com;<br>Clipped Email RE Microsoft Word Version of Asset Purchase Agreement;<br>Clipped Document Marked State of Delaware, Office of the Secretary of State;<br>Stapled Document Marked Asset Purchase Agreement;<br>CCMB/USAD – RE Voter.com Proposal;<br>CCMB/USAD – Draft Purchase Agreement with Voter.com;<br>Voter.com Due Diligence;<br>USAD/Voter.com – Steve Goshman's Participation;<br>Envelope with Correspondence RE List of All Contents of USA Democracy Office in Storage; | |
| | | | | | 2C | LFS Working File #4 | CCMB/USAD – Closing Checklist Sapient;<br>CCMB – Documentation of Credit Advances to USAD; | |
| | | | | | 3 | | Closing Checklist;<br>Settlement Agreement;<br>Intercreditor Agreement; | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys on File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Sapient Note;<br>Sapient Pledge;<br>CCMB Pledge;<br>Credit Agreement;<br>Limited Guaranty;<br>Background Documents;<br>Drafts;<br>Notes & Law;<br>Clipped Correspondence Dated 6/22/00; | |
| | | | | | 4 | | Forbearance Agreement with Creditors;<br>CCMB Agreement with USAD Original Sapient Agreement with NASD 1998;<br>Enclosure Letter to Creditors Regarding Forbearance Agreement;<br>USAD Board Action;<br>Sapient Documents;<br>Voter.com Documents;<br>CCMB Notes;<br>Gerbsman Agreement;<br>Digex Lawsuit; | |
| C74665/46872 | New England Ribs Financing | KKrass | 10/26/99 | 10/29/03 | 03-792A | | Correspondence;<br>Telecopies;<br>Attorney Notes;<br>Background;<br>Daxon's of Peabody Operating Agreement;<br>Drafts;<br>Final Documents;<br>New England Ribs, Inc.;<br>CCMB New England Ribs; | |
| | | | | | 03-792B | LFS Working File RE Proposed Work-Out for New England Ribs and Rhode Island Ribs | LFS Notes Regarding Proposed Restructuring of NERI;<br>CCMB/New England Ribs – RE Rich Kasch Bankruptcy Threat;<br>CCMB/ New England Ribs – Form of Note for Damon's of Peabody Indebtedness;<br>CCMB/Rhode Island Ribs – LFS Notes, General;<br>CCMB/New England Ribs – LFS Notes;<br>CCMB/Damon's of Peabody – LFS Notes, General; | |

| Client/ Matter No. | Regarding/ Adverse Party | Attorneys on File | Opened | Closed | Vol. No. | SubCaption | Contents | Location |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Rhode Island Ribs Operating Agreement;<br>New England Ribs – Proposed Note Offering by Rhode Island Ribs and Damon's of Peabody;<br>CCMB/Damon's of Peabody Operating Agreement; | |
| C74665/46146 | Loan to Navion Aircraft LLC | KKross<br>RJoseph | 06/25/99 | 08/07/01 | 01-903A | | Correspondence;<br>Final Documents;<br>Attorney Notes;<br>Miscellaneous;<br>Background;<br>FAA Records (Bound); | |
| | | | | | 01-903B | Drafts | Regulatory Matters (Clipped);<br>Drafts;<br>Drafts; | |
| C74665/45913 | Organization Matters | JWhite | 05/21/99 | 10/29/03 | 03-791A | | Correspondence;<br>Telecopies;<br>Attorney Notes;<br>Miscellaneous;<br>Private Placement Memorandum K. Kross File;<br>45913;<br>Micah Halverson File;<br>Final Documents;<br>Engagement Letters; | |
| | | | | | 03-791B | | Distribution List;<br>Supplemental Memorandum;<br>Private Placement Memorandum;<br>Comments on Op Agr & PPM – July 1999;<br>Operating Agreement Articles;<br>Subscription Booklet;<br>Williams Analysis;<br>RMJoseph Notes;<br>Navion;<br>Miscellaneous File W/O Name;<br>Continental Capital Merchant Bank, LLC Audit Period 12/31/00; | |

FILED

2008 Dec 02 PM 04:35

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

# Exhibit B



222 SOUTH MAIN STREET
AKRON, OH 44308
330.849.6604 DIRECT
330.376.2700 MAIN
330.376.4577 FAX
bschrader@ralaw.com

November 4, 2008

**VIA EMAIL & REGULAR U.S. MAIL**

John Williams, Esq.
Williams & Conley
725 12th Street, NW
Washington, DC 20005-5901

Re: ***Thomas S. Zaremba, SIPA Trustee v. Shumaker, Loop & Kendrick, LLP***
**Adv. Proc. No. 06-03505**

Dear John:

I am writing to follow up on some of the outstanding issues that exist with the initial discovery requests and the documents produced by Defendant pursuant thereto on October 14, 2008 ("Document Production").

1. In response to Request No. 2, pursuant to the enclosure letter from Katherine Leong, a privilege log was forthcoming. To date, no privilege log has been received.

2. Pursuant to the privilege log produced with the Document Production in response to Requests 1.3-1.30, some items are being withheld on the basis that it is "confidential taxpayer information." I am not aware of a basis to withhold documents upon these grounds, nor am I aware of an applicable privilege that Shumaker, Loop & Kendrick could assert. Therefore, documents withheld on this ground need to be produced.

3. As to Continental Capital Corporation documents being withheld upon the ground of "work product," please note that previously, on September 8, 2006, your office was provided a copy of an "Irrevocable Waiver of the Attorney-Client and other Privileges," signed by Thomas Williams, Executive Vice President of Continental Capital Corporation. An additional copy of the waiver is enclosed. In addition to waiving the attorney-client privilege, the work-product privilege is also waived. Therefore, the Continental Capital Corporation documents withheld on the ground of work-product privilege need to be produced.

4. Our initial review of the Document Production reveals documents containing handwritten notes, most of which are un-readable. Insofar as these notes cannot be read, the Trustee reserves the right to inspect the originals of these documents.

5. Being withheld from the Trustee, on the basis of relevance, are the files of Continental Capital Advisors, Inc. ("CCA"), Continental Capital Merchant Bank ("CCMB"), and the remaining documents of Continental Capital Corporation ("CCC"). (Requests 1.1, 1.2, and 3). In your letter, dated October 28, 2008, you state "it would be helpful to understand your position regarding the relevance to your claims of every hard copy for these three entities."

   As you are aware, Document Requests 1.1., 1.2 and 3 are identical to the prior Rule 2004 Subpoenas which were before the Court on the Trustee's Motion to Compel. One of the arguments raised by Defendant for not producing these documents in response to the Subpoenas was that the adversary proceeding had been commenced and such requests were more appropriately made under the discovery rules. The Bankruptcy Court, in addressing Subpoenas 1 and 3 basically agreed, based upon the claims and the allegations contained in the Complaint. *See*, Memorandum and Decision at pp. 7-8. The Court stated that it "will…deny the Motion to Compel without prejudice to the Trustee seeking the subpoenaed documents through discovery in the adversary proceeding, subject to Rules 26-37." (Memorandum and Decision at p. 9.) Based upon the Court's ruling that the documents requested in the earlier Subpoenas are more appropriately sought in discovery conducted in this adversary proceeding, the documents must be produced.

   Please let me know if these documents will be produced or if the Trustee will need to seek Court intervention.

The Trustee has not completed his review of the Document Production, and reserves his right to address additional issues as they arise.

Very truly yours,

ROETZEL & ANDRESS, LPA

[signature]

Bruce R. Schrader, II

BRS/jp
Enclosure
cc: Craig Singer, Esq.
Gerry Kowalski, Esq.
John Becker, Esq.
George Rooney, Jr., Esq.
Patricia Fugee, Esq.
Thomas Zaremba, Trustee

1562741 \ 110511.0002

# IRREVOCABLE WAIVER OF THE ATTORNEY-CLIENT AND OTHER PRIVILEGES

## RE: CONTINENTAL CAPITAL CORPORATION (THE "COMPANY")

**To: All attorneys and law firms.**

I, Thomas Williams, Executive Vice President, Chief Operations Officer, Secretary and Treasurer of the Company, hereby irrevocably waive, on behalf of the Company, any attorney-client privilege, work product or other privileges of any kind or nature and request that all documents and files in your possession or under your control related to the Company be delivered to Thomas S. Zaremba, SIPA Trustee for the Liquidation of Continental Capital Investment Services, Inc. and Continental Capital Securities, Inc.

Thomas Williams, On behalf of Continental Capital Corporation

SEPTEMBER 7, 2006
Date Signed

*Subscribed in my presence on this* 7 *day of* September*, 2006.*

Notary Public

My Commission expires on: 7/05/09

KRISTI D. FREDERICK
Notary Public - State of Ohio
My Commission Expires July 05, 2009

100340 v_01 \ 110511.0002

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL CAPITAL INVESTMENT SERVICES, INC. AND CONTINENTAL CAPITAL SECURITIES, INC.,<br><br>Defendants. | ) | SIPA Liquidation<br><br>Adv. Pro. No. 03-3370<br><br>Bankruptcy Judge Mary Ann Whipple |
| In Re:<br><br>CONTINENTAL CAPITAL INVESTMENT SERVICES, INC. AND CONTINENTAL CAPITAL SECURITIES, INC.,<br><br>Defendants. | ) | |
| THOMAS S. ZAREMBA, ESQ., In his capacity as Trustee for the Liquidation of Continental Capital Investment Services, Inc. and Continental Capital Securities, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>SHUMAKER, LOOP & KENDRICK LLP, c/o David F. Waterman, Statutory Agent Shumaker, Loop & Kendrick, LLP North Courthouse Square 1000 Jackson Street Toledo, Ohio 43624-1573,<br><br>and | ) | Adv. Pro. No. 06-03505-maw |

| | |
|---|---|
| "JOHN DOE" DEFENDANTS (1-10) | ) |
| NAMES UNKNOWN | ) |
| c/o David F. Waterman, Statutory Agent | ) |
| Shumaker, Loop & Kendrick LLP | ) |
| North Courthouse Square | ) |
| 1000 Jackson Street | ) |
| Toledo, Ohio 43624-1573, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT SHUMAKER, LOOP & KENDRICK, LLP'S**
**FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rule 7033 of the Federal Rules of Bankruptcy, Shumaker, Loop & Kendrick, LLP ("Shumaker"), submits the following interrogatories to Plaintiff Thomas S. Zaremba, Esq. ("Trustee"), to be answered fully and separately in accordance with the Definitions and Instructions below within thirty (30) days of service.

**DEFINITIONS**

Unless a contrary meaning is apparent from the context, the following Definitions shall apply to these Interrogatories:

1. Plaintiff," "Trustee," "you" and "your" shall mean Plaintiff Thomas S. Zaremba, Trustee, and any predecessors, successors, and present or former employees, agents, attorneys, representatives, and all other persons acting or purporting to act on his behalf.

2. "Shumaker, Loop & Kendrick, LLP," "Defendant," and "Shumaker" shall mean Shumaker, Loop & Kendrick, LLP, its attorneys, employees, agents, and any other persons acting on its behalf.

3. "Person" shall mean any natural person or any Entity, as defined herein.

4. "Entity" shall mean any business, legal or governmental organization or association, including, without limitation, any corporation, proprietorship, partnership, joint

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 57 of 130

venture, joint marketing entity, business, consortium, club, association, foundation, governmental agency or instrumentality, society, and order.

5. "Communication" shall mean any conversation, discussion, agreement, inquiry, reply, correspondence, memorandum, report, or note, whether in person, by telephone, in writing, or by means of electronic transmittal devices.

6. "Correspondence" shall mean any Document, as that term is defined herein, prepared, sent, or received by any medium, whether handwritten, person to person, in a group, by telephone, by letter, by notice, by telex, by telecopier, by electronic mail, by instant message, or by any other process related to or referring to any topic or thing, including verbal, written, electric, electronic communication, together with any attachment, enclosures, exhibits, files, and or any other writing or document referenced by or transmitted with such correspondence.

7. "Document" shall be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure. A draft or nonidentical copy is a separate document within the meaning of this term. By way of example, a document includes, but is not limited to, the following items, whether printed, recorded, microfilmed, electronic, or contained on computer disk, file, or electronic mail, or reproduced by any process, or written or produced by hand, or whether a piece of paper or tangible item, and whether or not claimed to be privileged, confidential, or personal: documents; things; any physical article; physical specimens; models; prototypes; samples; letters; e-mails or electronic mail; memoranda; reports; agreements; advertisements; marketing materials; working papers; communications (including intra- and inter-departmental communications and intra- and inter-company communications); summaries of records of personal conversations; diaries; forecasts; statistical statements; blueprints; sketches; pictures; diagrams; overhead projections; graphs; charts; plans; drawings;

minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigation opinions or reports of consultants; opinions of counsel; reports of or summaries of either negotiations within or without the plaintiff, or preparation of such; circulars; drafts of any documents or things; notes; books; chapters; instruments; accounts; audio tapes; video tapes; software; computer programs; computer tapes; disks; ASCII disks; magazines; articles; publications; abstracts; papers; posters; manuscripts; presentations; speeches; and all other material of any tangible medium of expression and original or preliminary notes.

8. "Relating to" shall mean anything comprising, concerning, constituting, containing, commenting on, dealing with, describing, discussing, embodying, evidencing, identifying, illustrating, analyzing, referring to, reflecting, regarding, responding to, setting forth, stating, supporting, tending to prove or disprove, or in any way, either directly or indirectly, pertaining to the subject matter of the request.

9. When referring to a person, "identify" shall mean to provide, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10. When referring to a document, "identify" shall mean to provide, to the extent known, information about the (i) type of document; (ii) its general subject matter; (iii) the date of the document; and (iv) author(s), addressee(s), and recipient(s).

11. When referring to any non-written communication, "identify" shall mean to provide, to the extent known, information about the (i) identity of the natural persons making and receiving the communication and their respective principals or employers at the time of the communication; (ii) date, manner, and place of the communication; and (iii) content of the communication.

12. "All," "any," and "each" shall be construed to mean "any and all."

13. "And" and "or" shall be construed either conjunctively or disjunctively so as to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

14. The use of the singular form of any word includes the plural and vice versa.

**INSTRUCTIONS**

1. All Interrogatories are to be construed to call for information that is known or accessible to: (i) you; (ii) Debtors; (iii) the Securities Investor Protection Corporation; (iv) any other federal or state agency; (v) Continental Capital Corporation, Inc.; or (vi) any predecessors, successors, parents, subsidiaries, officers, directors, agents, representatives, employees, accountants, or lawyers of any of (i) through (v), above.

2. The Interrogatories contained herein are continuing in character to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure. You are obligated to supplement your responses promptly if and when any new or additional documents come into your possession or control or into the possession or control of your present or former agents, representatives, employees, and/or lawyers.

3. When an Interrogatory calls upon a party to "*state the basis*" of or for a particular claim, assertion, allegation, or contention, the party shall:

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof) which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the Interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the Interrogatory;

(c) state separately the acts or omissions on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the Interrogatory; and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the Interrogatory.

4. If any Interrogatory is objected to in part, a complete answer to all portions of the Interrogatory not objected to shall be provided and a statement made explaining why only a partial answer can be given.

5. Whenever a date, amount, computation, or figure is requested, the exact date, amount, computation, or figure is to be given unless it is unknown. If it is unknown, the approximate or best estimate should be given, and the answer should state that such date, amount, computation, or figure is an approximation or estimate.

6. For any information withheld on the ground that it is protected by the attorney-client privilege, work-product immunity, or any other claim of privilege or immunity, provide as to each document information satisfying the requirements of Fed. R. Civ. P. 26(b)(5).

7. To the extent these Interrogatories seek information which is recorded in any form of document, including electronically stored documents such as word processing files and e-mail, or to the extent these Interrogatories seek identification of documents, including electronically stored documents, please take steps to ensure that all such documents are preserved for this litigation and ensure that no responsive electronically stored documents are erased or deleted.

8. Any term not specifically defined herein shall be construed in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy.

9. The definitions and instructions above apply to each and every Interrogatory herein. The definitions and instructions herein are for purposes of discovery requests only and do not constitute definitions for purposes of interpreting any documents at issue in the case. Any term not specifically defined herein is to be defined in accordance with the Federal Rules of Civil Procedure.

10. The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

11. Each Interrogatory is to be answered separately.

12. The answers to all Interrogatories are to be verified under oath by an officer or other agent thereof competent to and authorized to testify on behalf of Trustee, and the objections, if any, are to be signed by the attorney making them.

**INTERROGATORIES**

For each transaction that you claim constitutes a fraudulent transfer for which you are entitled to recover from Shumaker, identify:

1. The date(s) of the transaction and of any part(s) or component(s) thereof;

2. The transferor(s) and transferee(s), including any intermediate transferor(s) and transferee(s);

3. The amount of money or the item(s) of property transferred and the instrument(s) by which the transfer was effectuated (i.e., check, wire, cash);

4. The reason(s) for the transfer;

5. The person(s) who authorized the transfer;

6. The person(s) at Shumaker who received the transfer and, if the transfer first went to an intermediate transferee, who at the intermediate transferee received the transfer;

7. Any goods, services, or other things of value received by any person or entity in exchange for or as a result of the transfer, and all persons or entities who received the goods services or things of value;

8. All facts supporting your position that the transfer is recoverable from Shumaker as a fraudulent transfer;

9. All grounds upon which you believe the transfer to be fraudulent; and

10. All persons with knowledge or information regarding the transaction or regarding any of the facts stated in response to Interrogatories 1 through 9 above.

______________________________
John Villa (admitted *pro hac vice*)
Craig Singer (admitted *pro hac vice*)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005

(202) 434-5000 (voice)
(202) 434-5029 (fax)

and

______________________________
Gerald R. Kowalski (Bar No. 0022323)

COOPER & WALINSKI LPA
900 Adams Street
Toledo, Ohio 43604

(419) 241-1200 (voice)
(419) 242-5675 (fax)

*Counsel for Defendant Shumaker, Loop & Kendrick, LLP*

Dated: July 7, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2008, I caused a copy of the foregoing Defendant Shumaker, Loop & Kendrick, LLP's First Set of Interrogatories to be served by hand upon:

Thomas A. Matuszak, Esq.
Roetzel & Andress, LPA
One SeaGate
Suite 1700
Toledo, OH 43604

and by U.S. first-class postage prepaid mail on:

John P. Donahue, Esq.
P.O. Box 526
119 West Second Street
Perrysburg, Ohio 43551

____________________________
Gerald R. Kowalski

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 65 of 130

# EXHIBIT C



ROETZEL & ANDRESS
A LEGAL PROFESSIONAL ASSOCIATION

222 SOUTH MAIN STREET
AKRON, OH 44308
330.849.6604 DIRECT
330.376.2700 MAIN
330.376.4577 FAX
bschrader@ralaw.com

August 7, 2008

***VIA E-MAIL DELIVERY AND REGULAR U.S. MAIL DELIVERY***

John Villa, Esq.
William & Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005

Craig Singer, Esq.
William & Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005

Gerald R. Kowalski, Esq.
Cooper & Walinski, LPA
900 Adams Street
Toledo, OH 43604

Re: **In re: Continental Capital Investment Services, Inc. and Continental Capital Securities, Inc.**
***Thomas S. Zaremba, Trustee v. Shumaker, Loop & Kendrick, LLP, et al.***
**Adv. Proc. No. 06-3505**

Gentlemen:

Enclosed please find Plaintiff's Responses to Defendant Shumaker, Loop & Kendrick, LLP's First Set of Requests for Production of Documents and Interrogatories in the above-referenced matter.

Very truly yours,

ROETZEL & ANDRESS, LPA

Bruce R. Schrader, II

BRS/lkl
Enclosure
1543834/110511/0002

*Any federal tax advice contained herein or in any attachment hereto is not intended to be used, and can not be used, to (1) avoid penalties imposed under the Internal Revenue Code or (2) support the promotion or marketing of any transaction or matter. This legend has been affixed to comply with U.S. Treasury Regulations governing tax practice.*

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 67 of 130

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | ) | SIPA Liquidation |
| Plaintiff, | ) | ADV. PROC. NO. 03-3370 |
| v. | ) | |
| CONTINENTAL CAPITAL INVESTMENT SERVICES, INC. and CONTINENTAL CAPITAL SECURITIES, INC., | ) | BANKRUPTCY JUDGE JUDGE MARY ANN WHIPPLE |
| Defendants. | ) | |
| In re: | ) | |
| CONTINENTAL CAPITAL INVESTMENT SERVICES, INC and CONTINENTAL CAPITAL SECURITIES, INC., | ) | |
| Defendants. | ) | |
| THOMAS S. ZAREMBA, TRUSTEE, ESQ. | ) | ADV. PROC. NO. 06-03505-maw |
| Plaintiff, | ) | **PLAINTIFF'S RESPONSES TO DEFENDANT SHUMAKER, LOOP & KENDRICK, LLP'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES** |
| v. | ) | |
| SHUMAKER, LOOP & KENDRICK LLP, ET AL | ) | |
| Defendants. | ) | |

**OBJECTIONS AS TO ALL OF DEFENDANT'S DISCOVERY REQUESTS**

Thomas S. Zaremba, SIPA Trustee ("Trustee"), objects to each of Defendant Shumaker Loop & Kendrick's ("SLK") discovery requests:

1- to the extent that each or any of them requests information protected from disclosure by the attorney-client and/or work product privilege;

2- to the extent that each or any of them contemplate that the Trustee will search all Continental Documents (defined below) to locate responsive information. Following his appointment, the Trustee secured several million pages of documents related to Continental Capital Corporation ("CCC"), Continental Capital Investment Services, Inc. ("CCIS"), and Continental Capital Securities, Inc. ("CCS") and their respective affiliates ("Continental Documents") from a variety of different sources and locations. Some documents have no detailed index and, therefore, responsive Continental Documents may be in the Trustee's possession without the Trustee's knowledge. However, the Trustee has made indexes of all such Continental Documents (Indexes) available for inspection and will make such Indexes and Continental Documents available to Defendant at mutually convenient times at Defendant's costs; and

3- to the extent of any attempt by Defendant to alter the Rules governing the Trustee's responses to the Defendant's discovery requests.

## RESPONSES TO REQUESTS FOR PRODUCTION

1. All documents, including without limitation ledger entries, accounting records, checks, check registers, check stubs, wire transfer reports, bank statements, invoices, correspondence and communications, relating to any or all of the "Transfers" defined in Paragraph 27 of the Complaint.

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" defined in Paragraph 27 of the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First**

**Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

2. All documents relating to the alleged insolvency of CCS, CCIS, and CCC, including without limitation the fact of their insolvency, the date(s) on which they became insolvent, and for how long they remained insolvent.

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

3. All documents relating to the allegation in Paragraph 23 of the Complaint that "Debtors' funds and/or property were used to pay legal and other expenses of Davis, CCC, CCC Affiliates, the Portfolio Companies, CCMB and CCAdvisors."

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the Debtor's funds as stated in Paragraph 23 of the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence,**

**billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

4. All documents relating to any money or properly transferred from CCS, CCIS, and/or CCC to Shumaker, directly or indirectly, including without limitation all documents relating to the time, source, and reason(s) for each such transfer.

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

5. All documents relating to any approval(s) that CCS, CCIS, or CCC, or anyone acting on any of their behalf, gave to transfer any money or property to Shumaker.

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described**

**in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

6. All documents relating to the allegation in Paragraph 28 of the Complaint that Debtors made transfers of money or property to Shumaker "with the actual intent to hinder, delay or defraud creditors of Debtors."

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

7. All documents relating to the allegations in the Complaint that Debtors and CCC did not receive reasonable equivalent value in exchange for any transfers of money or property to Shumaker.

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

8. All documents relating to any benefit that Debtors or CCC received, or failed to receive, in exchange for any transfers of money or property to Shumaker.

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

9. All documents relating to the allegations in the Complaint that Debtors and CCC "intended to incur, or believed or reasonably should have believed that they would incur debts beyond their ability to pay as such debts became due."

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

10. All documents relating to the allegations in the Complaint that Debtors and CCC made transfers of money or property after a claim of a creditor of the Debtors and CCC arose.

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

11. All documents relating to any other transferees to whom money or property was given or otherwise transferred by Debtors before it was transferred to Shumaker.

**OBJECTION AND RESPONSE: The Request is overly broad and unduly burdensome. It is also vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

12. All documents identified or referenced in the Complaint and/or in your responses to Defendant's First Set of Interrogatories, or upon which Plaintiff relied in drafting the Complaint.

**OBJECTION AND RESPONSE: This Interrogatory impermissibly seeks information protected from disclosure by the work-product privilege. It is also overly broad and unduly burdensome. It is vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

13. All documents supporting any claims for damages you make in this Action.

**OBJECTION AND RESPONSE: This Interrogatory impermissibly seeks information protected from disclosure by the work-product privilege. It is also overly broad and unduly burdensome. It is vague and ambiguous. Reasonable persons could disagree as to the scope of the request. Moreover, Defendant is the recipient of the "Transfers" as alleged in the Complaint and Defendant necessarily has documents responsive to this request that Plaintiff does not have. On August 7, 2006, Plaintiff issued to the Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents described in this Request. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena and this Request. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff.**

**Without waiving the aforesaid objections, Plaintiff will, at a mutually agreeable date and time, make available responsive documents including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protective order.**

## RESPONSES TO INTERROGATORIES

For each transaction that you claim constitutes a fraudulent transfer for which you are entitled to recover from Shumaker, identify:

1. The date(s) of the transaction and of any part(s) or component(s) thereof;

**OBJECTION AND RESPONSE: The Interrogatory is vague and ambiguous in that is does not provide sufficient detail to decipher or determine what constitutes "any part(s) or component(s)" of a transaction. Moreover, Defendant is the recipient of the transactions forming the subject matter of the Interrogatory and Defendant necessarily has documents and information in its possession or under its control necessary to respond to this Interrogatory that Plaintiff does not yet have. Accordingly, until Defendant provides Plaintiff requested information, the term "transaction" remains undefined, rendering the Interrogatory ambiguous, overly broad and unduly burdensome. On August 7, 2006,**

**Plaintiff issued to Defendant a Bankruptcy Rule 9016 subpoena requesting that Defendant provide Plaintiff with documents containing information responsive to this Interrogatory. Pursuant to the Bankruptcy Court's Order with respect to the Trustee's Motion to Compel, the Trustee, on July 8, 2008, served upon Defendant the Trustee's First Set of Requests for Production requesting the same documents described in the Trustee's prior subpoena. See, Plaintiff's Request for Production No. 2 to Defendant requesting documents evidencing Defendant's billings or invoices to 37 entities and 11 individuals, including related correspondence, billing summaries, and documents evidencing payment of those invoices and the source of those payments. To date, Defendant has not produced the requested documents to Plaintiff. Depending on the number of "transactions" forming the basis of this Interrogatory, it may exceed the number of Interrogatories that may permissibly be propounded.**

**Without waiving said objections, the Trustee hereby invokes his Option to Produce Business Records in lieu of a response, as provided in F.R.C.P. 33(d), as the answer to the foregoing Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing the records in the possession of the Trustee and the burden of deriving or ascertaining the answer will be substantially the same for either party. Accordingly, the Trustee will, at a mutually agreeable date and time, make available to the Defendant records to be reviewed that may contain some or all of the information sought in this Interrogatory, including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protection order.**

**2.** The transferor(s) and transferee(s), including any intermediate transferor(s) and transferee(s);

**OBJECTION AND RESPONSE: Plaintiff's Objection and Response to Interrogatory No. 1 is incorporated herein by reference in response to Interrogatory No. 2.**

3. The amount of money or the item(s) of property transferred and the instruments(s) by which the transfer was effectuated (i.e., check, wire, cash);

**OBJECTION AND RESPONSE: Plaintiff's Objection and Response to Interrogatory No. 1 is incorporated herein by reference in response to Interrogatory No. 3.**

4. The reason(s) for the transfer;

**OBJECTION AND RESPONSE: Plaintiff's Objection and Response to Interrogatory No. 1 is incorporated herein by reference in response to Interrogatory No. 4. Furthermore, the Interrogatory improperly calls for a narrative response.**

5. The person(s) who authorized the transfer;

**OBJECTION AND RESPONSE: Plaintiff's Objection and Response to Interrogatory No. 1 is incorporated herein by reference in response to Interrogatory No. 5.**

6. The Person(s) at Shumaker who received the transfer and, if the transfer first went to an intermediate transferee, who at the intermediate transferee received the transfer;

**OBJECTION AND RESPONSE: Plaintiff's Objection and Response to Interrogatory No. 1 is incorporated herein by reference in response to Interrogatory No. 6.**

7. Any goods, services, or other things of value received by any person or entity in exchange for or as a result of the transfer, and all persons or entities who received the goods services or things of value;

**OBJECTION AND RESPONSE: Plaintiff's Objection and Response to Interrogatory No. 1 is incorporated herein by reference in response to Interrogatory No. 7.**

8. All facts supporting your position that the transfer is recoverable from Shumaker as a fraudulent transfer;

**OBJECTION AND RESPONSE: Plaintiff's Objection and Response to Interrogatory No. 1 is incorporated herein by reference in response to Interrogatory No. 8. Furthermore, the Interrogatory improperly calls for a narrative response.**

9. All grounds upon which you believe the transfer to be fraudulent; and

**OBJECTION AND RESPONSE: Plaintiff's Objection and Response to Interrogatory No. 1 is incorporated herein by reference in response to Interrogatory No. 9. Furthermore, the Interrogatory improperly calls for a narrative response.**

10. All persons with knowledge or information regarding the transaction or regarding any of the facts stated in response to Interrogatories 1 through 9 above.

**OBJECTION AND RESPONSE: Plaintiff's Objection to Interrogatory No. 1 is incorporated herein by reference. The Interrogatory contains at least 9 discrete subparts and, depending on the number of undefined "transactions" exceeds the permissible number of Interrogatories that may be propounded. Furthermore, the Trustee cannot identify "all persons" with knowledge or information as that information is unknown to the Trustee. The Trustee can only identify those persons of whom he is aware. Furthermore, to the extent that individuals have been identified and/or are known to the Trustee as potentially having knowledge regarding the facts stated in the responses to Interrogatories 1 through 9, they are certainly known to the Defendant. To the extent the Trustee is aware of such persons, they have been previously disclosed to the Defendant in the Trustee's Initial Disclosures pursuant to F.R.C.P. 26(a), which disclosures are incorporated herein by reference as if rewritten in their entirety. Moreover, the disclosures are subject to the continuing discovery in this case and related adversary proceedings and merely represent the information available to the Trustee at the time of responding to Defendant's First Set of Interrogatories. The Trustee will supplement in accordance with the applicable provisions of the Civil Rules.**

**Without waiving said objections, the Trustee hereby invokes his Option to Produce Business Records in lieu of a response, as provided in F.R.C.P. 33(d), as the answer to the foregoing Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing the records in the possession of the Trustee and the burden of deriving or ascertaining the answer will be substantially the same for either party. Accordingly, the Trustee will, at a mutually agreeable date and time, make available to the Defendant the records to be reviewed that may contain some or all of the information sought by the foregoing Interrogatory, including the Indexes. Documents in the Trustee's possession that are subject to a confidentiality agreement will require consent or Court authorization under the terms of an adequate protection order.**

*As to All Objections and Responses:*

Patricia B. Fugée (0070698)
Bruce R. Schrader, II (0039418)
John W. Becker (00654910)
Stephen W. Funk (0058506)
ROETZEL & ANDRESS
One SeaGate, 9th Floor
Toledo, OH 43604
Ph: (419) 254-7985
Fx: (419) 242-0316
E-mail: pfugee@ralaw.com
E-mail: bschrader@ralaw.com
E-mail: jbecker@ralaw.com
E-mail: sfunk@ralaw.com

ATTORNEYS FOR THOMAS S. ZAREMBA,

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of August, 2008, I caused a copy of the foregoing Responses and Objections to Defendant Shumaker, Loop & Kendrick, LLP's First Set of Requests for Production of Documents and Answers to First Set of Interrogatories to be served by U.S. first-class postage prepaid mail and via e-mail delivery on:

John Villa *(pro hac vice)* (Email: jvilla@wc.com)
Craig Singer *(pro hac vice)* (Email: csinger@wc.com)
WILLIAM & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005

and

Gerald R. Kowalski, Esq. (Email: kowalski@cooperwalinski.com)
COOPER & WALINSKI LPA
900 Adams Street
Toledo, Ohio 43604

Bruce R. Schrader, II (0039418)

VERIFICATION )
)
STATE OF OHIO )
) ss.
COUNTY OF LUCAS )

Thomas S. Zaremba, Trustee ("Trustee") for the liquidation of Continental Capital Investment Services, Inc. and Continental Capital Securities, Inc. ("Debtors"), being first duly sworn, deposes and says that as Trustee he is duly authorized to sign the foregoing answers to interrogatories on behalf of the Debtors; that the matters set out therein are not within his personal knowledge; that he is informed that there is no person at the Debtors having personal knowledge of such matters; that the answers have been assembled by authorized individuals relating to the investigation and the administration of the Debtors' estates in Adversary Proceeding No. 05-03322 before the United States Bankruptcy Court for the Northern District of Ohio, Western Division; and that to his best knowledge, information, and belief, as Trustee, the answers are true.

Thomas S. Zaremba, Trustee

Thomas S. Zaremba, SIPA Trustee

Sworn to before me and subscribed in my presence this 7th day of August, 2008.

Mary L. Wallace

Notary Public

1543167 v_01 \ 110511.0002

NOTARY PUBLIC STATE OF OHIO

MARY L. WALLACE
Notary Public, State of Ohio
My Commission Expires 9-22-12

# EXHIBIT D

LAW OFFICES
WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

CRAIG D. SINGER
(202) 434-5964
csinger@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 18, 2008

**Via E-mail and First-Class Mail**

Bruce R. Schrader, II, Esq.
Roetzel & Andress LPA
Suite 400
222 South Main Street
Akron, OH 44308

**Re: Zaremba v. Shumaker, Loop & Kendrick, LLP, Adv. Pro. No. 06-03505**

Dear Bruce:

As promised, I am writing to identify some of the issues we would like to address with you regarding Plaintiff's August 7, 2008 responses to SL&K's discovery requests. We look forward to discussing these issues in our upcoming meet and confer telephone call.

Plaintiff's Responses to SL&K's Requests for Production of Documents

From reviewing Plaintiff's responses, we understand that you intend to "make available responsive documents including [certain] Indexes," in response to each of SL&K's document requests. It is not clear to us from the face of the response, however, what documents you intend to produce. We look forward to discussing this with you with respect to each of SL&K's document requests.

In this regard, we have questions about Objection #2 of Plaintiff's Responses, which appears to suggest that Plaintiff does not intend to search Continental Capital-related files for responsive documents. If that is what Objection # 2 means, we believe it is inconsistent with Plaintiff's civil discovery obligations. See, e.g., Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc., 240 F.R.D. 401, 412 (N.D. Ill. 2007) ("We cannot allow defendants to merely offer plaintiff access to the Reebie documents because doing so shifts the undue burden entirely to the plaintiff.").

Objection # 2 also provides that documents will be made available "at Defendant's costs." We should discuss what you mean by that. Presumably we can agree on a mutually acceptable, and reciprocal, method of allocating the costs attendant to document discovery. In

particular, we should renew our discussion regarding the extent of production of electronically stored information, which can be particularly costly and time-consuming for both sides if it is not appropriately tailored.

Finally, once we have a better sense of what Plaintiff intends to produce, we should discuss the timing of our respective document productions. We believe it is most equitable for the parties to exchange similar types or categories of documents contemporaneously with one another so that neither side gets an unfair head start.

Plaintiff's Responses to SL&K's Interrogatories

Plaintiff's complaint against SL&K is based on certain "transactions" that Plaintiff alleges are fraudulent transfers. Accordingly, SL&K's interrogatories sought to ascertain pertinent details about those transactions, and Plaintiff's specific contentions about them, so that SL&K may understand and defend against the claims. To date, you have not responded substantively to any of SL&K's interrogatories; instead, Plaintiff's response to each interrogatory proposes to produce business records in lieu of a response under Fed. R. Civ. P. 33(d).

We would like to discuss with you what business records Plaintiff intends to produce that would constitute a complete response to SL&K's interrogatories. In using business records in lieu of written answers, a party must identify documents that "contain all of the information requested by the interrogatories." SEC v. Elfindepan, S.A., 206 F.R.D. 574, 576 (M.D.N.C. 2002) (emphasis added). Moreover, Rule 33(d)(1) requires a party to "specify the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." "[D]irecting the interrogating party to a mass of business records . . . [is] an abuse of the option provided by this subdivision." Fed. R. Civ. P. 33 advisory committee notes (1980) (referring to Rule 33(c), now 33(d)).

In addition, production of business records in lieu of written answers is permissible only when the burden of answering the interrogatories is "substantially the same for either party." Fed. R. Civ. P. 33(d). Given that the transactions at issue are the core of the complaint against Shumaker, the burden on Plaintiff to prepare written answers to the best of your current knowledge should be minimal, especially since almost two years have passed since the complaint was filed. See Cleveland Constr., Inc. v. Gilbane Building Co., No. CIV A. 05-471-KSF, 2006 WL 2167238, at *5-6 (E.D. Ky. July 30, 2006); In re Savitt/Adler Litig., 176 F.R.D. 44, 50 (N.D.N.Y. 1997).

Finally, at least some of SL&K's interrogatories do not appear to lend themselves to a documentary response. By way of example, Interrogatory no. 8 calls for Plaintiff to identify "[a]ll facts supporting your position that [each] transfer is recoverable from Shumaker as a fraudulent transfer," and Interrogatory no. 9 calls for Plaintiff to state "[a]ll grounds upon which you believe [each] transfer to be fraudulent." Because such "contention interrogatories and

requests for statements of fact . . . . do not lend themselves to answer by use of Rule 33(d)," business records are not a suitable substitute for written responses. Elfindepan, 206 F.R.D. at 577; Savitt/Adler, 176 F.R.D. at 49.

    We look forward to discussing these matters with you.

        Sincerely,

        Craig D. Singer

cc:    Gerald R. Kowalski, Esq.

# EXHIBIT E



222 SOUTH MAIN STREET
AKRON, OH 44308
330.849.6604 DIRECT
330.376.2700 MAIN
330.376.4577 FAX
bschrader@ralaw.com

August 28, 2008

***VIA E-MAIL DELIVERY AND REGULAR***
***U.S. MAIL DELIVERY***

Craig Singer, Esq.
William & Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005

Re:     **In re: Continental Capital Investment Services, Inc. and Continental Capital
         Securities, Inc.**
         ***Thomas S. Zaremba, Trustee v. Shumaker, Loop & Kendrick, LLP, et al.***
         **Adv. Proc. No. 06-03505**

Dear Craig:

Per our discussions, this letter is in response to your letter of August 18, 2008 regarding certain issues you have identified with respect to the Trustee's responses to Shumaker, Loop & Kendrick's ("SLK") discovery requests. This letter also identifies some of the issues we would like to address with you relating to SLK's responses to the Trustee's discovery requests.

As to your concern over what documents the Trustee will produce, the Trustee, in compliance with Rule 34 of the Federal Rules of Civil Procedure, will make available responsive documents. I am not aware of any requirement in the Civil Rules that would impose upon a party the obligation to specifically identify the documents they intend to produce. In fact, SLK responded to our document requests in the same manner. I believe that after our conference call and your review of the documents, your concerns will be alleviated.

As to the Trustee's Objection No. 2, in the course of his duties, the Trustee has been the recipient of millions of documents and records. Of these documents and records, the Trustee and his counsel have reviewed those records and documents that he believes were and are related to the liquidation proceedings of the Debtors and the Trustee's obligations therein. Further, the Trustee has reviewed those records and documents that he believes relate to this Adversary Proceeding. However, due to the volume of records, the Trustee, in addition to the records to be produced, will make available to you the Indexes and the Continental Documents. This review, the Trustee's responses to the document requests and the corresponding production are appropriate. Your reliance upon *American International Specialty Lines Ins. Co. vs. NWI-I, Inc* is misplaced. In fact, the court

in such case held that "it will be unduly burdensome and expensive to require SLT to review all of the Reedie documents in order to produce only those documents that are responsive to Plaintiff's request." The court in *American International* based its decision upon the specific facts of that case. In the present proceeding, the Trustee's responses and the documents to be produced, along with the Indexes and the Continental Documents, are appropriate and in compliance with the Civil Rules.

I am troubled by your statement that you believe the parties should exchange similar types or categories of documents contemporaneously and that you will condition the timing of your production after you "have a better sense of what [the Trustee] intends to produce." The production of documents is not based upon what the other party produces nor when it is provided. In all probability, the parties may not be producing and exchanging similar types or categories of documents. Any restrictions that you place on the production of documents, whether as to timing or what is actually produced, is unacceptable. The Trustee and his counsel will fully comply with the obligations imposed upon them by the Civil Rules and the Bankruptcy Rules and expects the same from SLK and its counsel. Further, the Trustee is willing to discuss the production of electronically stored documents, but objects to the wholesale refusal on SLK's part to produce electronically stored information. There is no such basis in the Civil Rules for withholding the documents.

As to the Trustee's use of Rule 33(d) and the production of business records in lieu of a written response to the interrogatory, under the current circumstances and the interrogatories at issue, the Trustee's responses are appropriate. Your concerns are premature. The Trustee intends to produce documents that are responsive to the interrogatories, as well as make available the Indexes and Continental Documents.

As to SLK's responses to the Trustee's discovery requests, below are some of the issues/concerns that need to be addressed:

1) As to your objection No. 8, SLK objects that the requests could include electronic documents. As stated above, nothing in the Civil Rules permits SLK to withhold the production of electronically stored information. During our discussions, we anticipate this matter will become a non-issue.

2) As to your objection No. 12, as previously stated, conditioning the production of documents upon the Trustee's responses and the Trustee producing reasonably equivalent categories of documents in response to SLK's Request is unacceptable. Both parties are under an obligation to produce documents, and the Trustee expects SLK to comply, as the Trustee will comply, without inapplicable and inappropriate conditions and restrictions.

3) <u>Document Request Nos. 1.1 - 1.30 and Request No. 3; Documents of Continental Capital Corporation, Continental Capital Advisors and Continental Merchant Bank.</u>

   All the requested documents must be produced. Any limitation or restriction imposed by SLK based upon relevance is unacceptable. Judge Whipple, in her ruling on the Motion to Compel, held that the Trustee may

seek such documents through discovery in this Adversary Proceeding. Further, the Bankruptcy Court held that these documents would be related to this proceeding. Waivers of the attorney client privilege have previously been provided to SLK. The only issue that needs to be discussed is when will these documents and records be produced.

4)   Document Request Nos. 2.1 - 2.8

Billing records, including invoices, payment records and related documents are discoverable. The numerous objections raised in response to these document requests, including attorney-client privilege and work product are not applicable. Waivers of the attorney client privilege have previously been provided. Further, typically, billing records themselves, are not even covered by the privilege. Additionally, the document requests are not vague or ambiguous. As to time frames, Request No. 2.1 contains a time period of January, 1998 through September, 2003. During our conference call, I anticipate these matters will also be addressed and resolved.

It should be noted that discovery is ongoing, and the lack of document production by SLK has hindered the ability of the Trustee to perform a complete fraudulent transfer analysis, which can only be performed after the requested documents are received and analyzed. The Trustee must obtain the requested documents from SLK. I am sure you recognize and appreciate the obligations imposed upon the Trustee to fully investigate the financial affairs of the Debtors. If you do not intend to produce these documents promptly, please let us know now so we can address it with the Court.

Upon receipt of this letter, please give me a call to discuss the scheduling of our call to discuss the production of documents.

Very truly yours,

ROETZEL & ANDRESS, LPA

Bruce R. Schrader, II

BRS/jrk
cc:   Thomas S. Zaremba, Trustee
      John W. Becker, Esq.
      George W. Rooney, Jr., Esq.

1547781/110511/0002

# EXHIBIT F

LAW OFFICES
WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

JOHN S. WILLIAMS
(202) 434-5646
jwilliams@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 17, 2008

**Via E-mail and First-Class Mail**

Bruce R. Schrader, II, Esq.
Roetzel & Andress LPA
Suite 400
222 South Main Street
Akron, OH 44308

**Re: Zaremba v. Shumaker, Loop & Kendrick, LLP, Adv. Pro. No. 06-03505**

Dear Bruce:

I am writing in regards to your letters of September 15 and 16, 2008, Craig Singer's letter of September 9, 2008, and our meet and confer conference call on September 5, 2008.

As to Shumaker's eighth and ninth interrogatories, we understand your position to be that documents will constitute your response to these interrogatories pursuant to Federal Rule of Civil Procedure 33(d). We have informed you that we do not believe these interrogatories are susceptible to being answered completely by documents.

Regarding the Trustee's documents requests, we confirm that we will produce documents as they are kept in the usual course of business pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i). As to whether we will produce the entire content of files, please consider the following. For Requests 1.3 through 1.30, we plan to produce the entire content of the requested files except for roughly 42 responsive documents that have been previously withheld on the basis of the work-product doctrine and will be produced upon receiving a valid waiver from CCC, about which we understand you will contact Mr. Franklin and Mr. Ayling, and approximately 21 documents that have been withheld because they contain individuals' confidential taxpayer information. For the requests associated with the Trustee's second subpoena, we understand that documents responsive to these requests, as discussed during the September 5 meet and confer, may not make up the entire contents of folders. Regarding Requests 1.1, 1.2, and 3, we will inform you of any documents to be withheld from production after we have had an opportunity to review the folders you identify. The folders may contain documents protected by the work-product doctrine or attorney-client privilege, or simply misfiled documents regarding other clients, and we will not know whether documents need to be withheld until we have conducted a review. As we agreed to in Craig's September 9 letter, Shumaker is in the process of comparing

the indices to the hardcopy file folders to insure that the indices accurately reflect the titles of the folders. We will inform you promptly when that is done.

As to the Trustee's second subpoena, you have asked that we also search "all other files that may contain documents and correspondence relating to the invoices" regarding Requests 2.3 and 2.4. We agree to further review the relevant client files that we reasonably believe may contain correspondence regarding billing and payment issues during the relevant period. As to Requests 2.1, 2.2, 2.5, and 2.6, we should discuss with you what you mean by "additional accounting records responsive to these Requests" in light of our meet and confer on September 5.

Regarding the preparation of redacted final bills for those entities for which privilege has not been waived, we appreciate that you have not yet made a determination regarding the issue. Having already once incurred substantial unnecessary expense redacting documents to comply with your earlier subpoenas, we must again reiterate that if you intend to file a motion to compel the production of the descriptions of Shumaker's legal services, you inform us promptly. In considering the issue, please note that Evenflo Co. v. Hantec Agents Ltd., No. 3:05-CV-346, 2006 WL 2945440 (S.D. Ohio Oct. 13, 2006), which you cite for the proposition that "[t]ypically . . . billing records and expense reports" are not privileged, went on to conclude that the billing records before it were privileged because "invoices which reveal the motive of the client in seeking representation, litigation strategy or the specific nature of the services provided are privileged," id. at *4 (emphases added) (citing Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir. 1999)). Consistent with authorities like Evenflo, Shumaker has taken the position that bills and expense reports are not altogether privileged, but the descriptions of the legal services provided by Shumaker are. See also United States v. Keystone Sanitation Co., 885 F. Supp. 672, 675 (M.D. Pa. 1994) (concluding that "narrative and identities of attorneys" in billing statements are protected by the attorney-client privilege).

Finally, thank you for agreeing in principle that each party should bear the cost of copying their requested documents. We are not, however, in a position to confirm the lowest "commercially available" rate for copying. We typically send copy requests of this kind to pre-approved local vendors. We would pass on to you the amount that the vendor charges us for copying the documents. If you would like to know the rate in advance, we can provide that information to you.

As you suggested in your letter of September 16, we should speak later this week regarding both sides' production of documents. We should also discuss the matters referenced above.

Very truly yours,

John S. Williams

cc:    George W. Rooney, Jr., Esq. (via email)
        John W. Becker, Esq. (via email)
        Gerald R. Kowalski, Esq. (via email)

# EXHIBIT G



222 South Main Street
Akron, OH 44308
330.849.6604 Direct
330.376.2700 Main
330.376.4577 Fax
bschrader@ralaw.com

September 15, 2008

Via e-mail and regular U.S. Mail

Craig Singer, Esq.
William & Connolly, LLP
725 Twelfth Street, NW
Washington, DC 20005

Re: **In re: Continental Capital Investment Services, Inc. and Continental Capital Securities, Inc.**
***Thomas S. Zaremba, Trustee v. Shumaker, Loop & Kendrick, LLP ("Shumaker"), et al.***
**Adv. Proc. No. 06-03505**

Dear Craig:

Following up on our conference call held on September 5, 2008, and your letter dated September 9, 2008, I wanted to address the matters we discussed and included in your letter. For the most part, your letter accurately sets forth the discussions of our conference call. I will only address the issues that we believe need clarification and/or further discussion.

As to the Trustee's production of documents, including productions in response to the interrogatories, your summary is accurate, except in two respects. First, as to interrogatories 8 and 9, your statement that the Trustee "will not produce responses at least until after [we] have received [your] document production" is a mischaracterization of the Trustee's position. The Trustee has responded to interrogatories 8 and 9 and, as stated in the conference call, when Shumaker's documents are produced, the Trustee will supplement, as necessary, any prior responses. Second, as to the volume of documents to be produced, the "foot to a foot-and-a-half" relates only to the fraudulent transfer-related documents, and does not include the insolvency-related documents.

With respect to the Trustee's document requests, as to Requests 1.1, 1.2 and 3, while not conceding that the production of the indices is proper, the Trustee will review the indices and let you know what files the Trustee requests be produced. Please confirm that the indices accurately reflect all the titles and all documents contained in such files. The Trustee reserves his right to request the production of all documents as requested in Requests 1.1, 1.2 and 3.

As to the production of documents with regard to Requests 1.3 through 1.30, and, in fact all document productions to be done by Shumaker, please confirm that the production of the responsive documents will be in the same manner and state as the originals thereof are

maintained, and that the entire content of each file will be copied and produced. Also, the Trustee reserves the right to inspect the originals of the files to be copied. Please advise as to the approximate volume of these files, as the Trustee may choose to review the originals in advance of copying.

As to Requests 2.3 and 2.4, in addition to your review of hard copy billing files, we would request that you search all other files that may contain documents and correspondence relating to the Invoices.

As to producing copies of the Invoices in response to Requests 2.1, 2.2, 2.5 and 2.6, if, in addition to the Invoices, there are additional accounting records responsive to these Requests, those documents should also be produced.

As to redacted Invoices, the Trustee has not yet made a determination as to whether he will file a motion to compel with regard to these documents and is reviewing the matter. "Typically, the attorney-client privilege does not extend to billing records and expense reports." *Evenflo Company, Inc. v. Hantec Agents Limited*, 2006 WL 2945440 (S.D. Ohio 2006), *citing*, *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir.), *cert. denied*, 528 U.S. 891 (1999). The burden to establish the existence of the privilege is upon the party asserting it. *supra.*

Finally, as to costs, the Trustee is in agreement that each party shall pay the per page copy cost to copy requested documents; provided, however, the per page copying cost is to be the lower of (i) the lowest per page copy rate commercially available to the responding party, or (ii) the lowest per page copying charge of either responding party.

If you disagree with anything contained in this letter, please contact me. During this coming week, we can discuss the timing and form of the respective productions.

Very truly yours,

ROETZEL & ANDRESS, LPA

Bruce R. Schrader, II

BRS/lkl
cc: George W. Rooney, Jr., Esq. – via e-mail
John W. Becker, Esq. – via e-mail
Gerald Kowalski, Esq. – via e-mail
1551539 \ 110511.0002

# EXHIBIT H



Not Reported in F.Supp.2d Page 1
Not Reported in F.Supp.2d, 2006 WL 2167238 (E.D.Ky.)
**(Cite as: 2006 WL 2167238 (E.D.Ky.))**

Only the Westlaw citation is currently available.
United States District Court, E.D. Kentucky.
CLEVELAND CONSTRUCTION, INC., Plaintiff
v.
GILBANE BUILDING CO., Defendant
**No. CIV A. 05-471-KSF.**

July 31, 2006.

Daniel R. Wireman, James D. Ludwig, Cleveland Construction, Mason, OH, for Plaintiff.
Buckner Hinkle, Jr., Ryan R. Loghry, Stites & Harbison PLLC, Lexington, KY, for Defendant.

MEMORANDUM OPINION AND ORDER

TODD, Magistrate J.

I. INTRODUCTION

***1** On October 14, 2005, plaintiff Cleveland Construction, Inc. ("CCI"), a subcontractor to Gilbane Construction Company ("Gilbane"), the construction manager on a construction project known as the University of Kentucky Biological/Biomedical Sciences Research Building Project ("the Project") on the campus of the University of Kentucky in Lexington, Kentucky, filed a complaint in Fayette Circuit Court against defendant Gilbane, alleging that Gilbane had breached the terms of a contract between these two parties, resulting in increased costs to CCI in doing the work required of it under the contract. In addition to its breach of contract claim, plaintiff also asserts a claim for equitable adjustment and seeks compensatory damages against Gilbane resulting from Gilbane's alleged breach of contract.

On November 7, 2005 Gilbane removed this action from Fayette Circuit Court. On November 11, 2005, Gilbane filed its answer to the complaint and asserted a counterclaim against CCI, alleging that (1) CCI failed to utilize a sufficient number of laborers during the Project to meet the Project schedule, (2) CCI failed to properly manage, supervise, and coordinate its work during the Project, and (3) CCI provided work that was substandard, unworkmanlike, and was otherwise not in conformance with the contract. Gilbane seeks dismissal of CCI's complaint and requests recovery of its attorney's fees incurred in defending this action.

II. THE DISCOVERY DISPUTE

This matter is before the court on Gilbane's motion to compel discovery from CCI concerning certain discovery requests that Gilbane served to CCI on February 16, 2006, which Gilbane asserts are inadequate.[FN1] More particularly, Gilbane requests that CCI be compelled to provide full and complete written answers to Interrogatory Nos. 2, 4, 5, 6, 7, 8, and 9. Gilbane also requests that it be awarded its attorney's fees incurred relative to the subject motion to compel discovery.

FN1. Pursuant to numerical ¶ 13 of the district court's Scheduling Order entered herein on February 3, 2006, all discovery disputes were referred to the Magistrate Judge for resolution. [DE # 14].

In response, CCI argues that Gilbane's motion to compel should be denied because (1) Gilbane has prematurely served contention interrogatories, and (2) it properly produced its business records, pursuant to Fed.R.Civ.P. 33(d), in answering these interrogatories. Therefore, for all of these reasons, CCI contends that Gilbane's motion to compel discovery from it should be denied and that it should be awarded its attorney's fees incurred in having to respond to Gilbane's motion to compel.

Discussion

In considering this matter, the Magistrate Judge is mindful of the scope of discovery permitted by Fed.R.Civ.P. 26, subsequent to the 2000 amendment thereto, which permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, ..." Thus, to resolve this discovery dispute, it is necessary to review the discovery requests at issue, CCI's responses thereto, and any subsequent supplementation of CCI's

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

discovery responses. At the outset, the Magistrate Judge notes that in CCI's answers to each of the Interrogatory answers in dispute, instead of directly answering the interrogatory, CCI has responded to the interrogatory by electing to produce its business records, pursuant to Fed.R.Civ.P. 33(d), and referring Gilbane to those business records to discern the answer that particular interrogatory.

***2** Fed.R.Civ.P. 33(d) provides:

(d) Option to Produce Business Records.

Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

Fed.R.Civ.P. 33(d).

Summarizing Gilbane's argument, Gilbane asserts that CCI's answers to the Interrogatories in dispute are incomplete and evasive and that CCI has improperly relied on Fed.R.Civ.P. 33(d) by referring Gilbane to CCI's business records, which consist of more than 11,400 pages of documents, instead of providing Gilbane complete written answers to these Interrogatories. Gilbane submits that CCI's incomplete and evasive answers should be treated as a failure to answer, pursuant to Fed.R.Civ.P. 37(a)(3). In further support of its motion to compel, Gilbane asserts that (1) the answers to the Interrogatories in dispute cannot be discerned from CCI's Project files, (2) that even if Gilbane could discern the answers to these Interrogatories from CCI's Project files, the burden upon Gilbane to derive CCI's answers thereto from CCI's Project files is substantially greater than it is for CCI, and (3) CCI's specification of documents is not sufficiently detailed as required by Fed.R.Civ.P. 33(d). In a nutshell, Gilbane argues that CCI should not be permitted to execute a "document dump" in response to these Interrogatories.

Summarizing CCI's argument in response to Gilbane's motion to compel, CCI argues that assuming *arguendo* that the interrogatories in dispute are contention interrogatories, they are premature and should have been served toward the end of discovery rather than at the beginning of discovery. CCI also counters that it properly utilized Fed.R.Civ.P. 33(d) in responding to these Interrogatories because (1) the interrogatory responses may be derived from CCI's business records, (2) the burden of deriving the responses is substantially the same for Gilbane as it is for CCI, and (3) its responses and additional supplementation are sufficiently detailed at this stage of the litigation. For these reasons, CCI submits that Gilbane's motion to compel should be denied and that since this discovery dispute is genuine, an award of attorney's fees to Gilbane would be inappropriate.

Analysis

***3** As seen from the language of Fed.R.Civ.P. 33(d), a party may use that rule to answer interrogatories only when the following three requirements have been met: (a) "the answer to an interrogatory may be derived or ascertained from the business records;" (b) "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served;" and (c) the specification is "in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."Fed.R.Civ.P. 33(d).

Before determining whether the foregoing qualifications have been met, it is necessary to review the information requested by the interrogatories in dispute and CCI's responses thereto, both of which are set out below:

*INTERROGATORY NO. 2:* Identify all of your employees, agents, contractors, vendors, or consultants with knowledge of the facts on which you rely for the claims you are asserting in this case.

ANSWER:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

To the extent that Gilbane is asking CCI to identify documents and facts upon which it will rely in this litigation, CCI objects pursuant to Fed.R.Civ.P. 26(b)(3) to providing such information because Gilbane is seeking disclosure of mental impressions, opinions, conclusions, or legal theories of CCI's counsel.

Without waiving the objection, CCI elects to produce its business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Specifically, Gilbane is directed to the project file, including but not limited to, the correspondence files, certified payroll reports, daily reports, and meeting minutes.

See also CCI's Pending Issue file previously submitted on 4/22/05.

*INTERROGATORY NO. 4:* With respect to the allegations in paragraphs 10 and 14 of the Complaint, identify each and every instance in which Gilbane: 1) delayed, disrupted, or hindered CCI's work; 2) caused CCI's work to be performed out of sequence; 3) failed to respond to CCI's claims; 4) failed to pay CCI in accordance with the Contract Documents; 5) failed to coordinate with all of the subcontractors; and 6) failed to properly administer the Project.

ANSWER: CCI elects to produce its business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Specifically, Gilbane is directed to the project file, including but not limited to, the correspondence files, change order requests, RFIs, ASIs, schedules, daily reports, and meeting minutes.

See also CCI's Pending Issue file previously submitted on 4/22/05.

*INTERROGATORY NO. 5:* With respect to the allegations in paragraphs 11 and 14 of the Complaint, identify each and every instance identified by you in your answer to Interrogatory No. 4 above, state the extent to which each instance reduced CCI's productivity, increased CCI's costs, and delayed and disrupted CCI's work.

ANSWER: CCI elects to produce its business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Specifically, Gilbane is directed to the project file, including but not limited to, the correspondence files, change order requests, RFIs, ASIs, schedules, daily reports, and meeting minutes.

***4** See also CCI's Pending Issue file previously submitted on 4/22/05.

*INTERROGATORY NO. 6:* With respect to the allegations in paragraph 12 of the Complaint, identify: 1) all instances in which CCI advised or notified Gilbane that CCI's work was being delayed; and 2) all change order requests or claims from CCI to Gilbane concerning the alleged delays.

ANSWER: CCI elects to produce its business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Specifically, Gilbane is directed to the project file, including but not limited to, the correspondence files, change order requests, RFIs, ASIs, schedules, daily reports, and meeting minutes.

See also CCI's Pending Issue file previously submitted on 4/22/05.

*INTERROGATORY NO. 7:* With respect to the allegations in paragraph 18 of the Complaint, describe in detail each and every fact and instance that Gilbane: 1) failed to properly supervise and manage the construction of the Project; 2) actively interfered with CCI's performance; 3) failed to coordinate and supervise other contractors; 4) failed to pay CCI for all of the work it performed on the Project; and 5) otherwise breached the Contract.

ANSWER: CCI elects to produce its business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Specifically, Gilbane is directed to the project file, including but not limited to, the correspondence files, change order requests, RFIs, ASIs, schedules, daily reports, and meeting minutes.

See also CCI's Pending Issue file previously submitted on 4/22/05.

*INTERROGATORY NO. 8:* With respect to the damages that you are claiming in this lawsuit, identify: 1) the total amount of damages you are claiming; 2) each individual component and category of damages, including dollar amount, that together comprise your total damages; 3) persons having

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

knowledge of your damages, and 4) all documents evidencing, supporting, or concerning each component of damages identified in your answer to this Interrogatory.

ANSWER: CCI elects to produce its business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Specifically, Gilbane is directed to the project file, including but not limited to, the claim previously submitted to Gilbane, the correspondence files, change order requests, RFIs, ASIs, schedules, daily reports, certified payroll reports, and meeting minutes.

See also CCI's Pending Issue file previously submitted on 4/22/05. In addition, CCI is owed a contract balance of $209,731.69.

*INTERROGATORY NO. 9:* With respect to the allegations in paragraph 22 of the Complaint, identify each and every item of labor, material, or other work that you contend was "over and above the requirements of the Contract," and for each item identified, state the cost incurred by CCI for such labor, material, or other work.

ANSWER: CCI elects to produce its business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Specifically, Gilbane is directed to the project file, including but not limited to, the claim previously submitted to Gilbane, the correspondence files, change order requests, RFIs, ASIs, schedules, daily reports, and meeting minutes.

***5** See also CCI's Pending Issue file previously submitted on 4/22/05.

In general, CCI answered each of the foregoing Interrogatories by simply producing its business records pursuant to Fed.R.Civ.P. 33(d). With the exception of its answers to Interrogatory Nos. 2, 8, and 9, CCI's interrogatory responses are identical.[FN2]

FN2. The differences among its answers to these interrogatories are miniscule. In answering Interrogatory No. 2, CCI first objects to that interrogatory, then answers by producing various business records. In answering Interrogatory Nos. 8 and 9, CCI also refers Gilbane to "the claim previously submitted to Gilbane, and in the answer to Interrogatory No. 8, CCI states that it is owed a contract balance of $209,731.69. Otherwise, CCI's answers to all of the interrogatories in dispute are identical.

A. Answer may be derived or ascertained from the business records

As previously stated above, the business records that CCI has produced to Gilbane in response to the Interrogatories in dispute consist of more than 11,400 pages of various categories of documents, such as "the Project file, the correspondence files, change order requests, RFIs, ASIs, schedules, daily reports, and meeting minutes," among others.

The Magistrate Judge is unpersuaded by CCI's argument that Gilbane can derive the answers to the disputed Interrogatories from CCI's business records. The Magistrate Judge is unpersuaded because only CCI knows what facts and information it has relied upon to support the allegations made in its complaint against Gilbane. Thus, it would be necessary for Gilbane to be able to read CCI's mind before Gilbane would be able to derive the answers to the disputed Interrogatories from CCI's business records. Additionally, even if Gilbane could read CCI's mind, that alone is no guarantee that it could discern the answers to its Interrogatories since it is highly unlikely that Gilbane would view certain facts and occurrences the same way that CCI does, as evidenced by the present discovery dispute. *See* *United States Securities and Exchange Commission v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C.2002) ("documents themselves rarely, if ever, reveal contentions of fact or law. A party reveals its contentions."); *The United Oil Co., Inc. v. Parts Associates, Inc.*, 227 F.R.D. 404 (D.Md.2005) (court granted motion to compel based on improper use of FRCP 33(d) when answers to interrogatories involved exercise of particular knowledge and judgment). Thus, this factor weighs in favor of Gilbane.

B. Burden of deriving the answer is substantially the same for both parties

Assuming *arguendo* that Gilbane could derive the answers to the Interrogatories in dispute from CCI's business records, CCI contends that the burden of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

deriving or ascertaining the answers thereto is substantially the same for Gilbane, the party serving the interrogatory, as it is for CCI, the party served; therefore, Fed.R.Civ.P. 33(d) specifies that when the burden is substantially the same for both parties, it is not unduly burdensome to require Gilbane to derive these answers.

In *Pascale v. G.D. Searle & Co.*, 90 F.R.D. 55 (D.R.I.1981), the court considered a similar argument made in a similar discovery dispute. The *Pascale* court concluded that the responding party's reference to Fed.R.Civ.P. 33(c)[FN3] was insufficient and ordered the responding party to supplement its interrogatory answers. The rationale underlying this decision is set out below:

FN3. At that time, Rule 33(d) was identified as Rule 33(c); in 1993, it was changed from subsection (c) to subsection (d).

***6** ... Answering interrogatories often requires the interrogated party to refer to written documents, particularly where the party is a corporate entity. If a party could invoke Rule 33(c) in every such case, by claiming that the "burden" of "deriving" the information from the records is substantially the same for both parties, discovery would be thwarted at every turn. Referring to a document in order to answer an interrogatory is not the kind of burden contemplated by the rule.
*Pascale*, 90 F.R.D. at 60.

More recently, an argument similar to CCI's was also rejected in *In re Savitt/Adler Litigation*, 176 F.R.D. 44, 50 (N.D.N.Y.1997), under the following succinct rationale:

... even if a substantial burden is imposed on plaintiffs by these interrogatories, that burden is neither unreasonable nor unfair. The interrogatories are completely focused on the allegations of plaintiffs' complaints, information to which defendants are entitled to prepare their defenses. The extent of the burden thus bears a direct relationship to the extent of the allegations made by the plaintiffs in their complaints and to the facts in possession of plaintiffs which support the allegations.

The Magistrate Judge concludes that CCI's answers to Gilbane's Interrogatories are within CCI's own knowledge rather than Gilbane's knowledge. Therefore, the burden for CCI to derive the answers to Gilbane's Interrogatories in dispute from its business records is less than it would be for Gilbane to do so. Thus, this factor weighs in favor of Gilbane.

C. Specificity of CCI's answers

CCI asserts that its responses and additional supplementation at this stage of the litigation are sufficiently detailed to permit Gilbane, the interrogating party, to locate and to identify, as readily as CCI, the party served, the records from which the answer may be ascertained.

In answering the disputed interrogatories, CCI has directed Gilbane to the following business records: its Project file, *including but not limited to*, the claim previously submitted to Gilbane, the correspondence files, change order requests, RFIs, ASIs, schedules, daily reports, certified payroll reports, and meeting minutes. Additionally, CCI also referred Gilbane to CCI's Pending Issue file previously submitted on 4/22/05.

The Magistrate Judge notes that CCI has not identified one single document that is responsive to any specific interrogatory. The Magistrate Judge concludes that CCI's response by producing its business various records under Fed.R.Civ.P. 33(d) fails to meet the specificity required by Fed.R.Civ.P. 33(d). As the court in *Elfindepan, supra*, observed, "[t]his attempted use of Rule 33(d) is more in the nature of a document dump than a specification of documents. The action does not comply with the final sentence in Rule 33(d) which requires specificity."In *Johnson v. Kraft Foods North America, Inc.*, 2006 WL 1675942 (D.Kan.2006), and in *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677 (D.Kan.2004), the court in each of those cases disapproved of the responding party's "document dump." The court in *Johnson* explained that "a party 'may not merely refer' another party to the documents 'hoping [the other party] will be able to glean the requested information from them.' Indeed, '[t]he court generally finds such practice unacceptable." ' (quoting *DIRECTV, Inc. Puccinelli, supra*, 224 F.R.D. at 680-81. Thus, this factor also weighs in favor of Gilbane.

D. Contention interrogatories

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

***7** In responding to Gilbane's motion to compel, CCI also asserts a curious argument concerning contention interrogatories. CCI first states: “Defendant, Gilbane, has attempted to put the cart before the horse. It filed what it alleges are contention interrogatories before document review by either side had occurred, before expert reports were filed, and well before either party even contemplated requesting a deposition.”*Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel,* p. 1 [DE # 21]. CCI then proceeds to argue that Gilbane's interrogatories are not contention interrogatories. Based on its argument that these interrogatories are not contention interrogatories, CCI notes that responses to non-contention interrogatories “do not require as much detail or specificity.”*Id.* at unnumbered page 4. With this statement, CCI impliedly argues that its responses are adequate because they do not need to be as detailed or as specific, since the interrogatories are not contention interrogatories. CCI next argues that assuming *arguendo* that Gilbane's interrogatories are contention interrogatories, they are premature and “are more properly served and answered late in the discovery process.”*Id.* at unnumbered page 5.

Additionally, relying on *Johnson v. Kraft Foods North America, Inc., supra,* CCI suggests that Gilbane's interrogatories at this stage of the litigation are unduly burdensome on their face. CCI's reliance on *Johnson* is misplaced. The court in *Johnson* was faced with contention interrogatories that sought “all facts” supporting the allegations contained within a paragraph of the complaint. *Johnson,* 2006 WL 1675942 at *7. By contrast, Gilbane's interrogatories in dispute are very narrowly tailored and ask for details relating only to specific allegations made by CCI in certain paragraphs of its Complaint.

CCI also relies on *In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328 (N.D.Cal.1985), and *Dot Com Entertainment Group, Inc. v. The Cyberbingo Corporation,* 2006 WL 917693 (W.D.N.Y.2006) to support its claim that Gilbane's interrogatories are contention interrogatories that are premature. The court in *Dot Com Entertainment* rejected a similar argument for the following reasons:

> ... Defendants are expected to have, even at an early stage, some good faith basis in fact and law for such claim and defense. *See*Fed.R.Civ.P. 11(b)(2), (3). Accordingly, Plaintiff's Interrogatories which primarily seek the basis for the defense and related counterclaim, even if they are assumed to be contention interrogatories, should be answered at this time.

*Id.* at *3.

Additionally, the court in *Convergent Technologies* also recognized that contention interrogatories served early in the litigation may serve very legitimate and useful purposes, such as ferreting out frivolous or unsupportable claims. 108 F.R.D. at 336. They might also serve as predicates for motions for summary judgment, which would not only help reduce the scope of the dispute but also help narrow the focus and the extent of discovery that needs to be taken. *Id.* at 337.Other legitimate purposes noted by the court in *Convergent Technologies* include clarifying the issues in the case and setting up early settlement discussions. *Id* . at 338.

***8** Thus, Magistrate Judge is unpersuaded by CCI's argument that the interrogatories in dispute are contention interrogatories that were prematurely served which do not need to answered in detail at this juncture.

III. CONCLUSION

In summary, for all of the foregoing reasons, the Magistrate Judge concludes that CCI's answers to Gilbane's Interrogatory Nos. 2, 4, 5, 6, 7, 8, and 9 are woefully inadequate and should be more specific.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Gilbane's motion to compel discovery from plaintiff CCI [DE # 20 is GRANTED.

2. CCI's objection to Interrogatory No. 2 is OVERRULED.

3. CCI is given twenty (20) days from the date of this Order in which to supplement its answers to Gilbane's Interrogatory Nos. 2, 4, 5, 6, 7, 8, and 9 with detailed and specific answers.

E.D.Ky.,2006.
Cleveland Const., Inc. v. Gilbane Bldg. Co.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2167238
(E.D.Ky.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT I

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION<br><br>Plaintiff<br><br>v.<br><br>CONTINENTAL CAPITAL INVESTMENT SERVICES, INC. and CONTINENTAL CAPITAL SECURITIES, INC.<br><br>Defendants | ) | SIPA Liquidation<br><br>Adv. Pro. No. 03-3370<br><br>JUDGE WHIPPLE<br><br>Adv. Pro. No. 04-03052 |
| In re:<br><br>CONTINENTAL CAPITAL INVESTMENT SERVICES, INC and CONTINENTAL CAPITAL SECURITIES, INC.<br><br>Debtors | ) | **AMENDED COMPLAINT FOR JUDGMENT, TURNOVER, ACCOUNTING, AND INJUNCTIVE RELIEF** |
| THOMAS S. ZAREMBA, TRUSTEE<br><br>Plaintiff<br><br>v.<br><br>CONTINENTAL CAPITAL CORPORATION,<br>c/o Kenney & Niehaus, Ltd.<br>5470 Main St., Suite 300<br>Sylvania, OH 43560-2154<br><br>Defendant | ) | |

Thomas S. Zaremba, Trustee, by and through counsel, for his Complaint, states as follows:

## PROCEDURAL HISTORY AND JURISDICTION

1. On August 25, 2003, the Securities Investor Protection Corporation filed its Complaint and Application against Continental Capital Investment Service, Inc. ("CCIS") and Continental Capital Securities, Inc. ("CCS") (collectively, the "Debtors") in the United States District Court for the Northern District of Ohio, commencing case No. 03-CV-7496, seeking, *inter alia*, the issuance of a protective decree adjudicating that the customers of CCIS and CCS were in need of protection under the Securities Investors Protection Act, 15 U.S.C. §77aaa et seq. and the appointment of a trustee to oversee the liquidation of CCIS and CCS.

2. On September 29, 2003, the District Court entered its Order commencing the liquidation proceeding of CCIS and CCS, appointing Thomas S. Zaremba as Trustee and referring the liquidation proceeding to the Bankruptcy Court.

3. On March 26, 2004 a pretrial scheduling conference was held. At this hearing the Court granted leave to Plaintiff to file its amended Complaint.

4. Title 15 U.S.C. §78fff(b) provides that "liquidation proceedings shall be conducted in accordance with, and as though it were being conducted, under Chapters 1, 3 and 5 and Subchapters I and II of Chapter 7 of Title 11.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and 15 U.S.C. §78eee.

6. This Adversary Proceeding for turnover, accounting and injunctive relief is a core proceeding pursuant to the provisions of 28 U.S.C. §§ 157(b)(7)(A), (E) and (O).

## FACTUAL BACKGROUND

7. CCIS and CCS are wholly-owned subsidiaries of Defendant Continental Capital Corporation ("CCC"). CCIS and CCS sold substantially all of their assets to Berthel Fisher & Company in or about March 2003, and ceased operations at that time.

8. CCC was not, at least in recent years, an operating entity. According to its books and records, CCC is, and has been for some time, insolvent.

9. William Clarke Davis ("Davis") is the founder and former President, Chairman and CEO of CCC. He was the registered representative of CCS from April 1984 to January 2002 and CCIS from March 2001 to March 2003.

10. On July 9, 2003, the United States Securities and Exchange Commission filed its complaint against Davis for preliminary and permanent injunction and other equitable relief. The basis of the Complaint, in part, was the liquidation and diversion of customer funds of CCIS and CCS.

11. It appears from the Debtors' books and records, and those of CCC, that CCC was merely a conduit for a network of subsidiary entities, many of which the Trustee is only now becoming able to identify. It further appears that the network was largely, if not completely, supported financially by funds from the Debtors' operations.

12. The Trustee's investigation to date has not revealed any operations by any of the entities affiliated with the Debtors and CCC.

13. The books and records of the Debtors and of CCC show that there were many intercompany transfers.

**COUNT ONE**
**Judgment Against Continental Capital Corporation**

14. The Trustee repeats and incorporates each of the foregoing allegations by reference as if more fully set forth herein.

15. Despite the fact that CCC did not have any separate business operations, CCIS transferred at least $3.7 million to CCC during the period from January 1, 2002 until August 31, 2003. There does not appear to be any legitimate business purpose or consideration for these transfers. (These transfers will be referred to collectively as the "Transfer").

16. The Transfer was made for the benefit of Defendant CCC, an insider of CCIS and CCS.

17. The Transfer to CCC constitutes conversion, fraudulent transfers, and/or preferential transfers which are recoverable by the Debtor.

18 CCIS is, therefore, entitled to judgment against CCC at least in the amount of $3.7 million, plus any other sums which the Trustee's investigation reveals have been improperly transferred to CCC.

**COUNT TWO**
**Turnover and Accounting Pursuant to 11 U.S.C. § 543**

19. The Trustee repeats and incorporates each of the foregoing allegations by reference as if more fully set forth herein.

20. The Transfer by the Debtors to CCC constitutes property of the estates to be recovered and administered by the Trustee pursuant to 11 U.S.C. §541.

21. As set forth above, CCC operated a network of subsidiaries and financially supported those affiliates with funds of the Debtors.

22. Pursuant to 11 U.S.C. §542, the Trustee is entitled to the immediate payment and turnover from CCC of any and all transfers made by the Debtors, directly or indirectly, to the Defendant from and after at least August 25, 1999, if not before.

23. The Trustee is entitled to an accounting of all the transfers received by Defendant from the Debtors, directly or indirectly, from and after August 25, 1999.

**COUNT THREE**
**Avoidance of Preferential Transfers Under §547 of the Bankruptcy Code**

24. The Trustee repeats and incorporates each of the foregoing allegations by reference as if more fully set forth herein.

25. Some or all of the Transfer constitutes a transfer of an interest of the Debtors' property within the meaning of § 101(54) of the Bankruptcy Code.

26. Some or all of the Transfer was made to or for the benefit of Defendant CCC, an insider of the Debtors.

27. Some or all of the Transfer may have been made on account of antecedent debt.

28. Some or all of the Transfer was made while the Debtors were insolvent.

29. Some or all of the Transfer was made during the preference period under 11 U.S.C. § 547(b)(4)(B).

30. Some or all of the Transfer enabled Defendant CCC to receive more than it would have received if (a) this case was a case under Chapter 7 of the Bankruptcy Code, (b) the Transfer had not been made, and (c) the Defendant received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

31. The Transfer may be avoided as preferential under § 547(b) of the Bankruptcy Code.

**COUNT FOUR**
**Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(A)**

32. The Trustee repeats and incorporates each of the foregoing allegations by reference as if more fully set forth herein.

33. Some or all of the Debt Transfer was made on or within one year before the filing date of the petition.

34. Upon information and belief, some or all of the Transfer to CCC was voluntarily or involuntarily made with the intent to hinder, delay, and defraud the Debtors' estates and its creditors.

35. Some or all of the Transfer is avoidable as a fraudulent transfer under § 548 of the Bankruptcy Code.

**COUNT FIVE**
**Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B)**

36. The Trustee repeats and incorporates each of the foregoing allegations by reference as if more fully set forth herein.

37. Some or all of the Transfer was made on or within one year before the filing date of the petition.

38. The Debtor received less than a reasonably equivalent value in exchange for the Transfer.

39. The Debtors: (A) were insolvent on the date that the Transfer was made, or became insolvent as a result of the Transfer; (B) were engaged in a business or transaction, or was about to engage in business or transfer, for which any property remaining with the Debtors was unreasonably small capital; and/or (C) intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

40. Some or all of the Transfer is therefore avoidable as a fraudulent transfer under § 548(a)(1)(B) of the Bankruptcy Code.

**COUNT SIX**
**Fraudulent Transfers Under O.R.C. § 1336.04(A)(1)**

41. The Trustee adopts each of the foregoing allegations as if more fully set forth herein.

42. Some or all of the Transfer was made by the Debtors without the Debtors receiving a reasonably equivalent value.

43. At the time of the Transfer, Debtors were engaged and/or were about to engage in business or transactions for which their remaining assets were unreasonably small in relation to their business.

44. Based on Defendant CCC's course of conduct, CCC believed or reasonably should have believed that Debtors would incur debts beyond their ability to pay as those debts as they became due.

45. Accordingly, some or all of the Transfer was fraudulent under O.R.C. § 1336.04(A)(1).

46. Therefore, some or all of the Transfer should be returned to the Trustee.

**COUNT SEVEN**
**Fraud Under O.R.C. § 1336.04(A)(2)(b)**

47. The Trustee adopts each of the foregoing allegations as if more fully set forth herein.

48. The Transfer was made by the Debtors without the Debtors receiving a reasonably equivalent value in exchange for the Transfer.

49. At the time of the Transfer, Debtors were engaged and/or were about to engage in business or transactions for which its remaining assets were unreasonably small in relation to the business or transaction.

50. Based on Defendant CCC's course of conduct, CCC believed or reasonably should have believed, that Debtors would incur debts beyond their ability to pay as those debt became due.

51. Accordingly, the Transfer was constructively fraudulent under O.R.C. § 1336.04(A)(2)(a).

52. Therefore, the Transfer should be returned to the Trustee.

**COUNT EIGHT**
**Fraudulent Transfer Under O.R.C. §1336.05(A)**

53. The Trustee adopts each of the foregoing allegations as if more fully set forth herein.

54. The Debtors made the Transfer to CCC without receiving reasonably equivalent value in exchange for the Transfer.

55. Debtors were insolvent at the time of the Transfer or became insolvent as a result of the Transfer.

56. Accordingly, the Transfer was constructively fraudulent under O.R.C. § 1336.05(A).

57. Therefore, some or all of the Transfer should be returned to the Trustee.

**COUNT NINE**
**Fraudulent Transfer Under O.R.C. §1336.05(B)**

58. The Trustee adopts each of the foregoing allegations as if more fully set forth herein.

59. Debtors are wholly-owned subsidiaries of Defendant CCC and, therefore, CCC is an "insider" within the meaning § 101(31)(B) of the Bankruptcy Code.

60. Upon information and belief, any debt for which the Transfer was made was an antecedent debt.

61. At the time of the Transfer, Debtors were insolvent or became insolvent because of some or all of the Transfer.

62. At the time of the Transfer, Defendant CCC had reason to know that Debtors were insolvent.

63. Accordingly, the Transfer was constructively fraudulent under O.R.C. § 1336.05(B).

64. Therefore, some or all of the Transfer should be returned to the Trustee.

**WHEREFORE**, the Trustee requests the Court:

1. Enter a Judgment against CCC for the minimum sum of $3.7 million dollars;

2. Direct and order CCC to turnover to the Trustee all property and assets received by it, directly or indirectly, from the Debtors from August 25, 1999 to the present;

3. Direct and order CCC to provide to the Trustee an accounting of all property and assets received by it, directly or indirectly, from the Debtors as and from August 25, 1999 to the present;

4. Issue a temporary restraining order pursuant to Section 105 of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure prohibiting CCC, and all persons acting in concert or participation with them from interfering, transferring, disposing of, or taking any action which would affect or impair any property of the estate, including the property transferred to Defendant.

5. Issue a preliminary injunction, and after trial, a permanent injunction, enjoining Defendant from interfering, transferring, disposing of or otherwise taking any action which would interfere with the administration of this bankruptcy estate and its property, including the property transferred to Defendant;

6. Issue an order directing Defendant to reimburse the estate for any and all attorney fees and costs which it has incurred as a result of Defendants' actions;

7. For such other relief as is just and equitable.

Respectfully submitted,

/s/ Patricia B. Fugée

Patricia B. Fugée (0070698)
Jason M. Shinn (0074267)
ROETZEL & ANDRESS
One SeaGate, 9th Floor
Toledo, OH 43604
Ph: (419) 242-7985
Fx: (419) 242-0316
E-mail: pfugee@ralaw.com
E-mail: jshinn@ralaw.com
ATTORNEYS FOR THOMAS S. ZAREMBA, TRUSTEE

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2004, a copy of the foregoing Amended Complaint will be forwarded by the Court's electronic notice to the parties participating in same, and that on May 11, 2004, a copy will also be served via first class, United States mail to:

Charles D. Niehaus, Esq.
Kenney & Niehaus, Ltd.
5630 N. Main St.
Sylvania, OH 43560

Dana Farthing, Esq.
SkyBank Legal Department
519 Madison Ave., 6th Floor
P.O. Box 1987
Toledo, OH 43603

Buzz Roberts, Esq.
Shumaker, Loop & Kendrick, LLP
North Courthouse Square
1000 Jackson
Toledo, OH 43624

__/s/ Patricia B. Fugée____________________
Patricia B. Fugée

66330_1 110511.0002

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 115 of 130

# EXHIBIT J



Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 188379 (S.D.N.Y.)
**(Cite as: 1992 WL 188379 (S.D.N.Y.))**

Page 1

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
UNITED STATES of America, Plaintiff,
v.
DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Frederick W. Devine, President, John R. Abbatemarco, First Vice President, George J. Albert, Second Vice President, Robert J. Cavanaugh, Secretary-Treasurer, Paschal McGuinness, former President, Irving Zeidman, former First Vice President, Francis J.P. McHale, former Secretary-Treasurer, Anthony Salerno, a/k/a "Fat Tony" Vincent DiNapoli, Louis DiNapoli, Peter DeFeo, Alexander Morelli, a/k/a "Black Alex", Liborio Bellomo, a/k/a "Barney", Defendants.
**No. 90 Civ. 5722(CSH).**

July 30, 1992.

Roger S. Hayes, Acting U.S. Atty. for the Southern Dist. of New York, New York City (Thomas A. Zaccaro, Marla Alhadeff, Gideon A. Schor, Edward J. Scarvalone, Asst. U.S. Attys., Martin C. Aronchick, Sp. Asst. U.S. Atty., of counsel), for plaintiff U.S. of America.
Sive, Paget & Riesel, P.C., New York City (Lawrence R. Sandak, Andrew J. Gershon, of counsel), for defendant Paschal McGuinness.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:
***1** This case is before the Court on defendant's motion for an order pursuant to Fed.R.Civ.P. 72 setting aside Magistrate Judge Katz's Orders of June 17, 1992 and July 20, 1992.

For the reasons set forth below, defendant's motion is denied.

*BACKGROUND*

The allegations of the Supplemental Complaint are discussed in the Court's decision denying defendants' motion to dismiss the complaint, *United States v. District Council,* 778 F.Supp. 738 (S.D.N.Y.1991), familiarity with which is assumed.

Discovery is ongoing and the discovery deadline established by Judge Katz is presently August 31, 1992.

By Order and Opinion dated November 8, 1991 Judge Katz denied the motions of defendants McGuinness, Zeidman, Devine and McHale for stays of that portion of discovery directed at them, that is, their own depositions and document production. These defendants argued that this discovery leaves them with a choice of either mounting a full defense in this civil case, and thus risking criminal liability, or invoking their fifth amendment privileges. Judge Katz denied these motions because he found that, particularly with the acquittal of McGuinness last summer, the defendants did not have criminal proceedings pending against them and so had not shown the special circumstances required for a stay of civil discovery. By Memorandum Opinion and Order dated February 3, 1992 this Court refused to vacate Judge Katz's order. *See* *United States v. District Council,* 782 F.Supp. 920, 923-26 (S.D.N.Y.1992).

On March 4, 1992 McGuinness served the government with a set of interrogatories. After objections from the government, on March 20, 1992 McGuinness served a revised set of interrogatories which sought identification of (i) predicate acts alleged against McGuinness, (ii) persons with knowledge of those allegations and (iii) documents relating to those allegations. Affidavit of Lawrence R. Sandak dated July 1, 1992 ("Sandak Aff.") ¶¶ 9, 13, 15-16.

On May 1, 1992 the government served responses to the interrogatories which defendant argues were deficient because they:

(a) failed to identify all racketeering acts with which McGuinness and his co-defendants are charged and which are presently known to the Government;

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(b) failed to identify all persons with knowledge of the facts underlying the Government's claims;

(c) failed to specifically identify any of the several thousand audio or video tapes which relate to the allegations in the complaint or which the Government intends to use in this litigation;

(d) improperly characterized case files, investigatory notes and documents secured by subpoenas as "business records" under Rule 33(c) in order to avoid the Government's duty to identify specific documents in response to specific requests;

(e) typically identified thousands, and often tens of thousands of documents, in response to interrogatories seeking the identification of specific documents, where only a minuscule percentage of the documents identified were relevant to the particular interrogatory; and

***2** (f) imposed on McGuinness the burden of locating documents which were compiled, and often prepared, by Government agents, on the ground that McGuinness' burden of location and identification is no greater than the Government's.

Sandak Aff. ¶ 18.

On May 20, 1992 McGuinness moved to compel further and more definite answers to the revised interrogatories. Defendant received favorable rulings from Judge Katz with respect to the further identification of predicate acts, individuals with knowledge and audio and video tapes. Sandak Aff. ¶¶ 22-24; *United States v. District Council,* Transcript of Hearing June 17, 1992 ("Tr.") at 7, 18-19, 34, 59, 62.

McGuinness takes issue with two rulings by Judge Katz regarding the government's responses to the interrogatories. McGuinness requested that the government identify documents concerning the various allegations in the complaint. The government, citing Fed.R.Civ.P. 33(c), responded to the document interrogatories by referencing documents within broad numerical ranges. One response included a range of 37,000 documents. Judge Katz ruled that these responses were adequate because the government had grouped the documents by investigative file or criminal prosecution. Tr. 37-39. McGuinness argues that the documents are not "business records" under Rule 33(c); that the government's answers violate local Civil Rule 46(a); and that the government should identify documents in compliance with local Rule 47(b)(4) or numerically by Bates stamp number. Defendant argues that the government is far more able to examine and particularly identify the relevant documents than an individual such as McGuinness. Sandak Aff. ¶¶ 25-34.

Defendant argues that Judge Katz erred by not delaying the deposition of McGuinness. Tr. 72-73. Defendant contends that he has been precluded from taking depositions by the government's assertions of privilege during the deposition of FBI agent Karen Worsham, by the government's refusal to immunize third party witnesses until after his deposition is complete, and by the government's designation of thousands of documents in response to the interrogatories. Sandak Aff. ¶¶ 11-12, 35-43.

By Order of June 17, 1992 Judge Katz refused to delay McGuinness' deposition until McGuinness had received all discovery concerning racketeering acts from the government. Tr. at 72-73. McGuinness filed timely objections to Judge Katz's order and the government responded to those objections.

By Memo Endorsement dated July 20, 1992 Judge Katz denied defendant's motion for a protective order sealing the deposition.

McGuinness was scheduled to be deposed on July 21, 1992. By Order to Show Cause dated July 20, 1992 McGuinness sought to delay the deposition until this Court decided the objections to the June 17, 1992 order.

Defendant also sought reversal of Judge Katz's July 20, 1992 order denying the motion for a protective order.

The Court signed the Order to Show Cause and made it returnable July 22, 1992. After a hearing with counsel from both sides, the Court affirmed Judge Katz's rulings denying the protective order and denying the stay. The Court reserved decision on whether the government had adequately responded to defendant's interrogatories.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*DISCUSSION*

***3** Under Fed.R.Civ.P. 72(a) the district court shall set aside a magistrate judge's discovery order when it is “clearly erroneous or contrary to law.” *See*28 U.S.C. § 636(b)(1)(A). “A magistrate's resolution of pretrial discovery disputes is entitled to substantial deference.” *Dubin v. E.F. Hutton Group, Inc.*, 125 F.R.D. 372, 373 (S.D.N.Y.1989); *Nikkal Industries, Ltd. v. Salton, Inc.*, 689 F.Supp. 187, 189 (S.D.N.Y.1988). “ ‘[I]n resolving discovery disputes, the Magistrate is afforded broad discretion, which will be overruled only if abused.’ ” *Litton Industries v. Lehman Bros. Kuhn Loeb*, 124 F.R.D. 75, 77 (S.D.N.Y.1989) (citation omitted).

*The Government's Rule 33(c) Designations*

Defendant contends that the government's investigative files and trial materials are not business records for the purposes of Rule 33(c). Defendant argues that the papers generated by litigation, such as transcripts and depositions, are not business records under Rule 33(c). Even if such documents are business records, defendant contends, Rule 33(c) does not apply because the government cannot show that “the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served.” Defendant asserts that the government, as compiler of the records, is in a vastly superior position to identify responsive documents. In addition, McGuinness cites the government's superior financial resources. According to McGuinness, he is in no position to evaluate the relevance of documents because the government has refused to make its immunity decisions as to third parties. Defendant also contends that where, as here, the responding party must review the documents for trial in any event, the designation of documents in response to a discovery demand imposes no undue burden on the government. McGuinness asks for a postponement of his deposition until the government makes more specific responses to the interrogatories.

The government responds that the designated documents are business records because they were compiled by law enforcement agencies before this case was filed. The government points out that McGuinness requested designations of documents relevant to his interrogatories and that is what the government did. As such, the government argues it is irrelevant whether the documents are business records or not. The government notes, as did Judge Katz, that McGuinness is inconsistent in arguing on the one hand that the government's documents are not business records but on the other hand asking that the government provide more specific designations. *See* Tr. 39.

The government argues that the defendant is mistaken in arguing that the burden of locating responsive documents is not equal because that sentence of Rule 33(c) was meant to prevent parties from serving the interrogating party with a “mass of records.” The government contends, and notes that Judge Katz agreed, that it has not served a mass of records but rather referred defendant to a discrete group of well-organized documents. Tr. 34-35, 37-38. The government argues that the burden is on McGuinness to review the documents, which have been in defendant's possession for more than a year, and assess their importance. *See* Tr. at 99. In any event, the government argues that McGuinness' deposition should not be delayed any further. The government contends that the defendant has already delayed his deposition and should not be entitled to delay further to gain a tactical advantage in discovery. The government argues, and Judge Katz agreed, that there is no basis for McGuinness to argue that he does not know the allegations against him at this late date. Tr. 74-75.

***4** Rule 33 provides in pertinent part:

(a) Availability; Procedures for Use. Any party may serve upon any other party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by any officer or agent, who shall furnish such information as is available to the party. Interrogatories may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.

....

(c) Option to Produce Business Records. When the answer to an interrogatory may be derived or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 188379 (S.D.N.Y.)
**(Cite as: 1992 WL 188379 (S.D.N.Y.))**

Page 4

ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the record from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

The Advisory Committee Notes for the promulgation of subdivision (c) in 1970 state:

Subdivision (c). This is a new subdivision, adopted from Calif.Code Civ.Proc. § 2030(c), relating especially to interrogatories which require a party to engage in burdensome or expensive research into his own business records in order to give an answer. The subdivision gives the party an option to make the records available and place the burden of research of the party who seeks the information. "This provision, without undermining the liberal scope of interrogatory discovery, places the burden of discovery upon its potential benefitee," Louisell, Modern California Discovery, 124-125 (1963), and alleviates a problem which in the past has troubled Federal courts. See Speck, The use of Discovery in United States District Courts, 60 Yale L.J. 1132, 1142-1144 (1951). The interrogating party is protected against abusive use of this provision through the requirement that the burden of ascertaining the answer be substantially the same for both sides. A respondent may not impose on an interrogating party a mass of records as to which research is feasible only for one familiar with the records. At the same time, the respondent unable to invoke this subdivision does not on that account lose the protection available to him under new Rule 26(c) against oppressive or unduly burdensome or expensive interrogatories. And even when the respondent successfully invokes the subdivision, the court is not deprived of its usual power, in appropriate cases, to require that the interrogating party reimburse the respondent for the expense of assembling his record and making them intelligible.

***5** In 1980 Rule 33(c) was amended to add the final sentence. The Advisory Committee notes for the 1980 amendment state:

Subdivision (c). The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision. Such practices are an abuse of the option. A party who is permitted by the terms of this subdivision to offer records for inspection in lieu of answering an interrogatory should offer them in a manner that permits the same direct and economical access that is available to the party. If the information sought exists in the from of compilations, abstracts or summaries then available to the responding party, those should be made available to the interrogating party. The final sentence is added to make it clear that a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived.

Local Civil Rule 46 provides in pertinent part:

(f) Whenever a party answers any interrogatory by reference to records from which the answer may be derived or ascertained, as permitted in Fed.R.Civ.P. 33(c):

(1) The specifications of documents to be produced shall be in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party from whom discovery is sought.

(2) The producing party shall make available any computerized information or summaries thereof that it either has, or can adduce by a relatively simple procedure, unless these materials are privileged or otherwise immune from discovery.

(3) The producing party shall provide any relevant compilations, abstracts or summaries in its custody or readily obtainable by it, unless these materials are privileged or otherwise immune from discovery.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 188379 (S.D.N.Y.)
**(Cite as: 1992 WL 188379 (S.D.N.Y.))**

Page 5

(4) The documents shall be made available for inspection and copying within ten days after service of the answers to interrogatories or at a date agreed upon by the parties.

“One party's familiarity with the documents does not necessarily create a disparity in the ease of discovery that would preclude resort to Rule 33(c).” *Compagnie Francaise D'Assurance v. Phillips Petro.,* 105 F.R.D. 16, 44 (S.D.N.Y.1984); *see also* *E.E.O.C. v. Metropolitan Museum of Art,* 80 F.R.D. 317, 318 (S.D.N.Y.1978) (old rule cases). Where the majority of a plaintiff's answers to interrogatories “refer defendants to various categories of documents which include from 50 to 200 file boxes,” plaintiff was held not to have complied with the requirements of Rule 33(c) and Southern District Local Rule 46. *Atlanta Shipping Corp., Inc. v. Cross & Brown Co.,* 113 F.R.D. 108, 111-12 (S.D.N.Y.1986); *see* *In re Master Key,* 53 F.R.D. 87, 89-90 (D.Conn.1971) (old rule).

As an initial matter, I see no reason for not considering the government's documents as business records. The government has made a massive production of documents and, like any civil party, the government is entitled to designate documents in response to interrogatories. Where the interrogating party makes a request for an answer to certain questions, a government agency responds inappropriately by merely designating documents because the interrogatory did not call for business records. *See* *E.E.O.C. v. Anchor Continental, Inc.,* 74 F.R.D. 523, 525 (D.S.C.1977); *S.E.C. v. Tellco Information Services,* 79 Civ. 6649 (CSH), slip. op. at 5 (S.D.N.Y. October 15, 1981) (Available on LEXIS). However, the defendant here has specifically asked for designations of documents. The documents in question were generated by the investigative “business” of the government agencies concerned. The government is entitled to avail itself of Rule 33(c)'s “business records” option.

***6** The district court is given wide discretion in determining the relative burdens of reviewing documents. Defendant argues that the government has vastly superior resources to search the documents for relevant materials. The government responds that now that it has designated the documents, defendant is in just as good a position to review them. I agree with the government that if its designations are precise enough, the defendant is equally able to review the documents.

In the case at bar the government has responded to defendant's interrogatories by designating large ranges of Bates numbered documents. In response to Interrogatory No. 44 the government designated 2,351 documents. In response to Interrogatory No. 16 the government designated 39,353 documents and an unspecified number of documents from the Federal Bureau of Investigation with the prefix “183-2830.” The latter interrogatory concerned a period of more than 5 years while the former only concerned 2 years.

As Judge Katz observed, the interrogatories at issue are “not asking factual questions to which the government has responded by making reference to documents from which the facts can be derived.” Tr. at 38. That circumstance would arise if McGuinness asked “who did I bribe?” and the government limited its response to a reference to thousands of documents, leaving McGuinness to search for a particular factual needle in a paper haystack. Rather, these interrogatories typically ask the government to “identify all documents concerning” a particular allegation of wrongdoing in the supplemental complaint, an inquiry Judge Katz characterized as “seeking a reidentification of documents already produced by asking the government to key all the documents to each of the many allegations in the supplemental complaint.” *Id.* I think the government has done enough. The documents are in English. No Rosetta stone is necessary to unlock their mysteries. Defendant and his counsel can read them and determine which documents pertain to an allegation, and to what degree, directly or indirectly.

Where the defendant asks for the identification of individuals, the government has responded with written answers. Defendant does not appear to object to those written answers. The government has identified discrete groups of documents in response to the defendant's request for the identification of documents. Since defendant asks for documents, the government's designations provide “sufficient detail to permit the interrogating party to locate and identify the records,” Local Rule 46 and “sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ascertained,"Rule 33, Fed.R.Civ.P.[FN1]

*Stay of Deposition*

At the hearing on July 22, 1992 the Court affirmed Judge Katz's ruling denying the motion for a stay of McGuinness' deposition. The Court's reasons for not staying defendant's deposition are as follows.

***7** Defendant argues that his deposition should be delayed because the government has denied McGuinness discovery and refused to immunize third party witnesses until after he testifies. McGuinness contends the government has sought to gain priority of discovery and force McGuinness to invoke his fifth amendment privilege.

The government responds that McGuinness has been informed of the charges against him and has already delayed his deposition for months. The government contends that even if this Court orders further specificity in the government's responses to the interrogatories, there is no reason to delay defendant's deposition.

Defendant's motion for a stay of his deposition revisits this Court's denial of McGuinness' motion for a stay of discovery until the statute of limitations has run on all possible criminal activity. *See District Council*, 782 F.Supp. at 923-26. The Court rejected then and rejects now any delay based on McGuinness' choice of whether to invoke the fifth amendment. McGuinness has had substantial discovery and is not entitled to further delay in his deposition. McGuinness must decide whether to invoke his fifth amendment privilege. As this Court has held, " 'the discomfort of the defendant's position does not rise to the level of a deprivation of due process. Others have faced comparable circumstances; the choice may be unpleasant, but it is not illegal, and must be faced.' " *Id.* at 925 (citation omitted).

Defendant might want more time to review the documents designated but, as Judge Katz pointed out, no party is entitled to priority in discovery. McGuinness has not raised any valid reasons for further delaying his deposition. Consequently, Judge Katz's ruling refusing to delay defendant's deposition will not be disturbed.

*Protective Order*

At the hearing on July 22, 1992 the Court affirmed Judge Katz's July 20, 1992 ruling denying defendant's motion for a protective order sealing his deposition. The Court's reasons for that ruling are as follows.

In a telephone conference call on July 20, 1992 Judge Katz denied defendant's motion for a protective order.

Defendant seeks a protective order sealing his deposition and interrogatory answers and restricting the use of his deposition and interrogatory answers to the government, defense counsel, District Council officers, any necessary support staff and any necessary experts. Defendant contends that he needs a protective order because in this civil case he is faced with the choice of defending himself fully or asserting his fifth amendment privilege.

The government responds that McGuinness' only discomfort is that he must either testify under the penalty of perjury or invoke his fifth amendment privilege. The government contends that these concerns are faced by all deponents and do not mean that McGuinness is entitled to a protective order. The government argues that a protective order sealing the deposition would prevent the Civil Division from reporting crimes that it uncovers during civil litigation.

***8** Under Fed.R.Civ.P. 26(c) protective orders can be entered "for good cause shown." Protective orders are entered and enforced so that parties will undertake full disclosure of all relevant information, which in turn facilitates resolution of disputes. *See Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir.1979).

Defendant is correct that protective orders have been enforced to deny the government access to civil discovery materials. District courts have enforced confidentiality orders to prevent government investigators from gaining access to materials produced in civil discovery. *Minpeco, S.A. v. Conticommodity Services, Inc.*, 653 F.Supp. 957, 959 (S.D.N.Y.), *aff'd*, 832 F.2d 739 (2d Cir.1987); *H.L. Haydon Co., Inc. v. Siemans Medical Systems, Inc.*,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

106 F.R.D. 551, 556-57 (S.D.N.Y.1985), *aff'd*, 797 F.2d 85 (2d Cir.1986). When the government seeks to intervene in a civil matter between two private parties to obtain access to discovery materials, the government bears the burden of showing "exceptional circumstances" or "compelling need" to modify a confidentiality order. *In re Grand Jury Subpoena Dated April 19, 1991*, 945 F.2d 1221, 1224 (2d Cir.1991); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 832 F.2d 739, 742 (2d Cir.1987); *Palmieri v. State of New York*, 779 F.2d 861, 866 (2d Cir.1985)).

However, those cases all involve the enforcement of an existing protective order against an attempt by the government to gain access to such materials. Where a party is seeking to obtain a protective order to prevent disclosure of matters to criminal authorities, good cause must be shown. *See John Hancock Leasing v. Luis Elec. Const.*, 127 F.R.D. 450, 452 (S.D.N.Y.1989). A party seeking such an order must demonstrate why the fifth amendment is not adequate to protect his interests. *Id.* Just as with his motion for a stay, McGuinness does not want to decide whether to invoke his fifth amendment privilege or to testify fully. As this Court has held in this case, forcing a civil party to choose whether to invoke the fifth amendment privilege is not a deprivation of due process. The choice McGuinness is facing does not entitle him to a protective order either. In these circumstances, the defendant has not shown good cause for the entry of a protective order.

Consequently, Judge Katz's ruling denying the protective order will not be disturbed.

*ORDER*

The motion of defendant McGuinness to vacate Judge Katz's Order refusing to order more specific designations and denying the motion to stay the deposition is denied. Defendant's motion to vacate Judge Katz's order denying the protective order is also denied. The case remains before Magistrate Judge Katz for supervision of pretrial matters.

FN1. Defendant does not specifically demand "computerized information or summaries," or "relevant compilations, abstracts or summaries" of the designated documents, although local Civil Rule 46(f)(2) and (3) obligate an interrogatee using the Rule 33(c) option to produce them, "unless these materials are privileged or otherwise immune from discovery." The government has not briefed these issues. Any further inquiry along these lines will be supervised by Judge Katz.

S.D.N.Y.,1992.
U.S. v. District Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America
Not Reported in F.Supp., 1992 WL 188379 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT K



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2889465 (D.Conn.)
**(Cite as: 2007 WL 2889465 (D.Conn.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

James LAGACE, Plaintiff,

v.

NEW ENGLAND CENTRAL RAILROAD, Defendant.

**No. 3:06CV1317 (RNC).**

Sept. 28, 2007.

Charles C. Goetsch, George J. Cahill, Jr., GEORGE J. CAHILL, JR., Cahill, Goetsch & Maurer, P.C., New Haven, CT, for Plaintiff.

Michael B. Flynn, Flynn & Associates, Quincy, MA, Thadd A. Gnocchi, Attorney General's Office, Hartford, CT, for Defendant.

*SECOND ORDER ON PLAINTIFF'S MOTION TO COMPEL*

DONNA F. MARTINEZ, United States Magistrate Judge.

***1** Pending before the court is the plaintiff's Motion to Compel, doc. # 22.[FN1] The plaintiff seeks to compel the disclosure of fourteen items listed on the defendant's Amended Privilege Log (doc. # 26, App. D at 6). The defendant claims that these items are protected by the work product doctrine. The plaintiff's motion is granted in part and denied in part, as set forth herein.

FN1. The court heard oral argument on the plaintiff's motion on April 10, 2007 and subsequently entered a partial ruling as to some of the disputed requests (namely Production Requests # 6, 7, 12, 18, 19, 21, 32, 35 and 41 and Interrogatory # 1). The defendant represented at oral argument that it objects to the remaining disputed items only insofar as they seek production of documents on the defendant's Amended Privilege Log (doc. # 26, App. D at 6). The parties were ordered to file supplemental briefs specifically discussing the applicability of the work product doctrine to the documents on the Amended Privilege Log.

I. *Factual Background*

The defendant operates a railroad between New London, Connecticut and East Alburg, Vermont. (Compl., ¶ 5.) The plaintiff was employed by the defendant as a conductor and was injured at the defendant's facility in Palmer, Massachusetts on November 28, 2005,. (*Id.*, ¶¶ 7-8, 10.)According to plaintiff's Motion to Compel, the plaintiff suffered a crush injury to his left foot and is permanently disabled from his occupation as a conductor. (Doc. # 23 at 2.) The plaintiff brings this action under the Federal Employers' Liability Act (FELA), 49 U.S.C. § 51, *et seq.* and certain other statutory provisions. [FN2]

FN2. In addition to FELA, the complaint references the Boiler Inspection Act, 42 U.S.C. § 20701, and the Safety Appliance Act, 42 U.S.C. § 20302.

The documents at issue were created by and/or were communications among the defendant's employees, defense counsel, and/or an entity called Railroad Risk Management, Inc. ("RRMI"). The defendant has submitted an affidavit from its in-house counsel, Daniel A. Hershman .[FN3](Doc. 26, App. J.) Mr. Hershman states that when an accident occurs, he has primary responsibility for deciding whether the accident or injury may give rise to litigation. (*Id.*, ¶ 7.) Mr. Hershman avers that on November 28, 2005, the day of plaintiff's injury, he hired defense counsel to protect the defendant's interests and prepare for litigation. (*Id.*, ¶ 9.) On that same date, defense counsel hired RRMI to assist in preparing for litigation. (*Id.*, ¶ 10.)According to the affidavit, RRMI is "only hired to investigate accidents or injuries when there is a strong likelihood that litigation will occur and RRMI is hired solely to assist defense counsel in preparing for litigation. (*Id.*, ¶ 11.)Mr. Hershman further states that the documents in the Amended Privilege Log were not created in the ordinary course of business but in anticipation of litigation. (*Id.*, ¶¶ 12-13.)

FN3. Mr. Hershman is actually employed by

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2889465 (D.Conn.)
**(Cite as: 2007 WL 2889465 (D.Conn.))**

Page 2

RailAmerica, Inc., a holding company whose subsidiaries include the defendant. (Hershman Aff., ¶ 5.) RailAmerica, Inc. provides legal services to its constituent companies. (*Id.,* ¶ 6.)

The documents include emails regarding the status of the plaintiff's medical condition, witness statements, and other communications. Perhaps most significant is an investigative report which includes the results of a reenactment of the accident conducted by the defendant and RRMI the day after the accident occurred. This reenactment was apparently conducted using the same locomotive and boxcar, at the same site, and with some of the same personnel involved. The plaintiff contends that he has no ability to conduct a similar reenactment of his own, because the defendant did not own the boxcar at issue and therefore cannot produce it to the plaintiff for investigation.

II. *Work Product Doctrine*

Work product issues are governed by federal law.[FN4] *EDO Corp. v. Newark Ins. Co.,* 145 F.R.D. 18, 21 (D.Conn.1992).“The work product doctrine is distinct from and broader than the attorney-client privilege.” *United States v. Nobles,* 422 U.S. 225, 238 n. 11 (1975) (citing *Hickman v. Taylor,* 329 U.S. 495, 508 (1947)). The work product doctrine shields from disclosure documents and other materials prepared in anticipation of litigation or trial by a party or a party's representative, absent a showing of substantial need and the inability to obtain the substantial equivalent without undue hardship.Fed.R.Civ.P. 26(b)(3); *see also* *In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991,* 959 F.2d 1158, 1166 (2d Cir.1992). The doctrine extends to notes, memoranda, correspondence, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney. *See* *United States v. Nobles,* 422 U.S. 225, 238-39 (1975); *Carter v. Cornell Univ.,* 173 F.R.D. 92, 95 (S.D.N .Y.1997).

FN4. The defendant does not claim that the attorney-client privilege applies to any of the documents on the privilege log.

***2** “Three conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative.”*Sicurelli v. Jeneric/Pentron Inc.,* No. 03-CV-4934 (SLT)(KAM), 2006 U.S. Dist. LEXIS 29813, *5 (E.D.N.Y. May 16, 2006) (internal citations and quotation marks omitted). The burden of establishing all three elements of the work product privilege rests with the party invoking the privilege. *Id.*

“Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3).” *United States v. Adlman,* 134 F.3d 1194 (2d Cir.1998).

“Even where the applicability of the work product doctrine has been established, factual material may be ordered produced upon a showing of substantial need and inability to obtain the equivalent without undue hardship.”*Sicurelli,* 2006 U.S. Dist. LEXIS 29813 at *7 (internal citations and quotation marks omitted).[FN5]“A substantial need for work product materials exists where the information sought is ‘essential’ to the party's defense, is ‘crucial’ to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.” *Strauss v. Credit Lyonnais, S.A.,* 242 F.R.D. 199, 237 (E.D.N.Y.2007) (internal citation and quotation marks omitted).“Substantial need is not evaluated in a vacuum, and in order to overcome work product protection, [the movant] must demonstrate that it cannot obtain the substantial equivalent of the information it seeks.”*Sicurelli,* 2006 U.S. Dist. LEXIS 29813 at *8. “Because the work product privilege does not protect the facts in that document (the privilege protects documents, not facts), the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories.”*Id.,* *9-10.

FN5. As to opinion work product, “which shows the mental impressions, conclusions, opinions or legal theories of an attorney or other representative,” the Second Circuit has held that “at a minimum, such material is to be protected unless a highly persuasive showing is made.” *United States v. Adlman,* 134 F.3d 1194, 1204 (2d Cir.1998).*See also*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

> *In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir.2000). The defendant has not argued that any of the items on the Amended Privilege Log are subject to this higher standard.

"Undue hardship does not mean that the movants must prove that obtaining the information elsewhere is absolutely impossible ..." *Strauss*, 242 F.R.D. at 237 (internal citation omitted). All they must show is that "it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than from the factual work product of the objecting party."*Id.*"[A]lthough expense may be considered in determining undue hardship, in the ordinary case, the cost of one or a few depositions is not enough to justify discovery of work product."*Sicurelli*, 2006 U.S. Dist. LEXIS 29813, *10.

III. *Discussion*

The plaintiff's FELA claim requires him to prove:

> the traditional common law elements of negligence: duty, breach, foreseeability, and causation. At the same time, the plaintiff's burden in making a showing of causation and negligence is lighter under FELA than it would be at common law because the theory of FELA is that where the employer's conduct falls short of the high standard required of him by the Act and his fault, in whole or in part, causes injury, liability ensues. Thus, under FELA, an employer has a duty to provide its employees with a safe workplace, which it has breached if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees. Accordingly, ... an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law.

***3** *Tufariello v. Long Island R.R.*, 458 F.3d 80, 87 (2d Cir.2006) (internal citations and quotation marks omitted). Under this standard, it is apparent that investigations of how the accident occurred are relevant within the meaning of Fed.R.Civ.P. 26(b)(1). The condition of the equipment is also relevant, as are the plaintiff's medical records.

Having made a threshold determination that the discovery sought is relevant, the court turns to an item-by-item discussion of the disputed production requests and interrogatories to decide whether the materials on the privilege log are shielded from disclosure by the work product doctrine.

*Production Request # 9:*

The court begins with the most hotly contested issue, which is the claimed work product protection of RRMI's reenactment the day after the accident. Plaintiff's Production Request # 9 seeks, among other things, the production of all inspection, maintenance and repair records for the equipment involved in the accident. The plaintiff argues that Item # 11 on the Amended Privilege Log, RRMI's Investigation Report, is responsive to this request and is not work product because it was not prepared in anticipation of litigation. Plaintiff also argues that, even if the work product protection applies, he has substantial need for it and cannot obtain the equivalent information without undue hardship.

The defendant contends that the document was prepared in anticipation of litigation. The defendant argues that its counsel hired RRMI to conduct an investigation in anticipation of litigation.

The plaintiff argues that the investigation was not conducted in anticipation of litigation but for routine business purposes. He argues that the defendant investigates accidents as a routine matter in order to improve safety practices. Plaintiff has submitted deposition testimony suggesting that reenactments are "standard practice." (Pl's Second Suppl. Mem., Doc. # 54, App. A at 18.)

A document is protected by the work product doctrine if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998) (internal citations and quotation marks omitted). A document does not lose protection simply because it was created both in anticipation of litigation and to assist with business decisions. *Id.*

The court concludes that the defendant anticipated litigation immediately in this case. The plaintiff was

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

seriously injured, counsel was retained immediately, and counsel immediately retained RRMI for investigative purposes. The defendant's in-house counsel affirms that RRMI is hired only when there is a strong likelihood that litigation will occur. The court therefore finds that the investigative report was created in anticipation of litigation and is protected by the work product doctrine.

***4** The analysis does not end there, however. The plaintiff contends that he has substantial need for the report because he cannot observe the boxcars as they were 24 hours after the accident and has no way of reenacting the accident with the same train cars and with the same loads contained on each car. He also argues that it is impossible for him to inspect the actual boxcar to find out if it is defective. The plaintiff has not, however, made a showing as to why any of that information is essential to his case, crucial to a liability determination or highly probative on contested issues. *See, e.g., Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199 (E.D.N.Y.2007). Plaintiffs frequently must prosecute their cases without access to information that might have been more readily available 24 hours after the incident. The fact that the defendant happened to collect that information does not automatically entitle the plaintiff to a copy of the defendant's work product.[FN6]

> FN6. Of course, if the defendant or its experts intend to rely on the report at trial, they will have to disclose it. See Fed.R.Civ.P. 26(a).

Even if the plaintiff could make a showing of substantial need, moreover, he has failed to demonstrate his inability to obtain the information from other sources without undue hardship. Although the plaintiff argues that the defendant is unable to produce the boxcar for testing purposes, there is no record as to any efforts made by the plaintiff to obtain it. Nor is there any evidence about any logistical or financial barriers to obtaining it. Most significantly, the plaintiff has not presented any evidence that he cannot obtain substantially the same information via interrogatories or by deposing individuals involved in the reenactment. Although the report is protected by the work-product doctrine, the facts contained in it are not protected. Because the plaintiff has failed to establish both "substantial need and the inability to obtain the substantial equivalent without undue hardship," Fed.R.Civ.P. 26(b)(3), item # 11 of the defendant's Amended Privilege Log need not be disclosed as it is protected by the work product doctrine. Put another way, the plaintiff's motion to compel is granted as to Request # 9 except for Amended Privilege Log item # 11.

*Production Requests # 1 and # 4:*

The plaintiff's Production Requests # 1 and # 4 seek production of documents relating to the plaintiff's medical records. The defendant objects to the requests to the extent that they seek production of items # 3, 4, and 5 on the Amended Privilege Log, which are email discussions among the defendant, RRMI and counsel regarding the plaintiff's medical condition. The defendant argues that those items are work product because they were communications among the defendant's employees and RRMI employees created in anticipation of litigation. The plaintiff argues that the emails might instead constitute routine tracking of injured employees.

According to the Amended Privilege Log, items # 3, 4, and 5 are dated between August 1, 2006 and October 10, 2006. The complaint was filed on August 23, 2006. In light of the court's conclusion that RRMI was hired in anticipation of litigation the day of the accident, the court finds that these emails also were created in anticipation of litigation and are therefore protected. Furthermore, the plaintiff cannot show substantial need for these items, as he has access to his own medical records.

***5** The plaintiff's motion to compel is granted as to Production Requests # 1 and 4, except that Items # 3, 4 and 5 on the Amended Privilege Log are protected by the work product doctrine and need not be produced.

*Production Requests # 13, 15 and 16:*

These production requests seek, among other things, the trainmaster's complete file, any injury and accident investigative and inspection reports, and emails or memoranda pertaining to investigation of the accident. The defendant objects to these requests insofar as they seek production of items on the Amended Privilege Log. Specifically, it appears that items 1, 2, 6, 7, 8, 9, 11, 12, 13 and 14 on the Amended Privilege Log could be responsive. (The

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

plaintiff's supplemental brief states, however, that he does not seek to compel item # 14.) The Amended Privilege Log states that all of these items were generated by and/or exchanged among the defendant, its counsel and/or RRMI in anticipation of litigation. As such, and for the reasons previously discussed, the court finds that the items are protected by the work product privilege.

The plaintiff argues that he has substantial need as to documents 1, 11, 12 and 13 because they are based on observations made within a day after the accident. For the same reasons discussed above, the plaintiff has not established both "substantial need and the inability to obtain the substantial equivalent without undue hardship."Fed.R.Civ.P. 26(b)(3).

The plaintiff next argues that he has substantial need for the statement of Jim Rivers, item # 8, because when plaintiff's counsel deposed Mr. Rivers, he did not recall certain details such as what the train engineer told him about how the accident happened. The plaintiff speculates that Mr. Rivers might have had a better recollection when his statement was taken the day after the accident than he had when he was deposed.[FN7]Plaintiff has failed to explain, however, why the forgotten details are so crucial that the court should disregard the work product protection. Nor has the plaintiff made any showing that the information cannot be obtained from other sources.

FN7. The defendant's second supplemental brief states that "[defense] counsel has examined Mr. Rivers's statement and can definitively represent to the court that Mr. Rivers['] statements mirror his deposition testimony." (Doc. # 57 at 7.)

To the extent that the plaintiff claims to have substantial need for other employees' witness statements taken shortly after the accident, he has not established that the information cannot be obtained by deposing the witnesses.

The plaintiff's motion to compel is granted as to Requests 13, 15 and 16, except that items on the defendant's Amended Privilege Log are protected by the work product doctrine and need not be produced.

*Production Requests # 28 and # 30:*

Plaintiff's Production Requests # 28 and 30 seek, among other things, statements taken by the defendant including notes or memoranda about such statements. The defendant objects to these requests to the extent that they seek production of items 3, 4 and 5 on the Amended Privilege Log, the emails concerning plaintiff's medical condition. The court has held that those items are protected by the work product doctrine.

***6** The plaintiff's motion to compel is granted as to Requests 28 and 30, except that items on the defendant's Amended Privilege Log are protected by the work product doctrine and need not be produced.

*Request # 29:*

Plaintiff's production request # 29 seeks copies of any statements taken by the defendant. The defendant objects to the extent that these seek the witness statements listed as items 6, 7, 8 and 9 on the Amended Privilege Log. The court has already held that those items are protected by the work product doctrine and that the plaintiff has failed to establish substantial need for them.

The plaintiff's motion to compel is granted as to Request # 29, except that items on the defendant's Amended Privilege Log are protected by the work product doctrine and need not be produced.

*Interrogatory # 7:*

Plaintiff's interrogatory # 7 asks the defendant to "identify and describe all inspections, maintenance and repairs made to the train car and equipment involved in the alleged accident and give the names, addresses, and job classifications of the persons making each inspection" for two years before and one year following the accident.[FN8]

FN8. The request originally sought information for a longer period, but the plaintiff has limited the request to this period.

The defendant objects to this interrogatory insofar as it seeks production of items on the Amended Privilege Log. The court has held that the items on

06-03505-maw Doc 58-1 FILED 12/12/08 ENTERED 12/12/08 18:36:36 Page 129 of 130

the Amended Privilege Log are protected by the work product doctrine and need not be produced.

However, this is not a request for production but an interrogatory. "The interrogatories seek facts, not documents or tangible objects, and the proper form of response is a narrative answer, not a reference to documents or objects where the answers might be found." *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 48 (N.D.N.Y.1997). The work product doctrine protects documents, not facts. The defendant must therefore respond to this interrogatory and must "identify and describe" all inspections, including the ones conducted by RRMI.

The plaintiff's motion to compel is granted as to Interrogatory # 7, except that any documents on the defendant's Amended Privilege Log need not be produced.

SO ORDERED.

D.Conn.,2007.
Lagace v. New England Cent. Railroad
Not Reported in F.Supp.2d, 2007 WL 2889465 (D.Conn.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.